

**VIA ECF**

April 30, 2019

Hon. Pamela K. Chen, U.S.D.J.
United States District Court, E.D.N.Y.
255 Cadman Plaza East
Brooklyn, NY 11201-1800

**Re:**   *Gold v. Shapiro, Dicaro, & Barack, LLC, et al. (1:18-06787)*

Dear Judge Chen:

Adam M. Swanson
Partner
T. 203-399-5928
F. 203-399-5810
aswanson@mccarter.com

McCarter & English, LLP
One Canterbury Green
201 Broad Street
Stamford, CT 06901
T. 203-399-5900
F. 203-399-5800
www.mccarter.com

BOSTON

HARTFORD

STAMFORD

NEW YORK

NEWARK

EAST BRUNSWICK

PHILADELPHIA

WILMINGTON

WASHINGTON, DC

        We represent Defendants, Select Portfolio Servicing, Inc. ("SPS") and The Bank of New York Mellon Trust Company, Trustee ("BONY") (collectively, "Defendants") in the above-captioned matter.  Pursuant to Your Honor's March 21, 2019 and March 22, 2019 Orders, we submit this supplemental letter in further support of Defendants' Motion to Dismiss.

**PROCEDURAL POSTURE**

        In light of the previous submissions,[1] and the Court having held oral argument on Defendants' dismissal motion, we provide only a brief background. This FDCPA dispute centers on two underlying events: (1) letters sent to Plaintiff Yosef Gold ("Gold") in October 2017, warning him he was at risk for foreclosure for failing to repay a $600,000 debt; and (2) BONY commencing a foreclosure action on January 17, 2018 in New York state court ("2018 Foreclosure Action").  In the 2018 Foreclosure Action, co-defendant Shapiro, DiCaro & Barak, LLC ("SDB") was BONY's foreclosure counsel, BONY the plaintiff and SPS the servicer of the mortgage.  Here, Defendants have moved to dismiss and the Court held oral argument on March 21, 2019 and ordered supplemental briefing.

        The Court's supplemental Order directed the parties to address three issues: (1) the Supreme Court's recent decision in *Obduskey v. McCarthy & Holthus LLP*; (2) the Second Circuit's decision in *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*; and (3) the applicability of New York General Business Law § 349 to the October 2017 letters.  As discussed further below, the Supreme Court's *Obduskey* decision bolsters Defendants' dismissal motion; the Second Circuit's *Arias* decision does not apply; and the New York General Business Law is inapplicable to this non-consumer-oriented action.

**ARGUMENT**

        This Court may dismiss all claims against BONY and SPS without reaching any of the supplement Order issues because: (1) all FDCPA causes of actions stemming from the October 2017 Letters are time-barred, leaving only the single act of commencing the 2018 Foreclosure Action as an alleged FDCPA violation; (2) SPS was not a party to the 2018 Foreclosure Action and cannot be liable for commencing

---

[1] SPS and BONY incorporate by reference their previous dismissal submissions to the Court and any capitalized terms herein shall have the same meaning as previously defined.

April 30, 2019
Page 2

it;[2] and (3) BONY, the plaintiff in that action,  is a creditor and not liable under the FDCPA,[3]  15 USC § 1692a(6)(F).

## I.    A Successful Affirmative Defense Does Not Make a Lawsuit a Sham or Frivolous

The single event before the Court's consideration—the commencement of the 2018 Foreclosure Action—cannot be a violation of the FDCPA.  BONY had the right to commence the 2018 Foreclosure and made no misrepresentation about the debt.  (*See* Def. Ltr. Br. (03/01/2019) ("Defs. Br."), at p. 2, available at ECF Doc. No.26.)  To find that Plaintiff's state an FDCPA claim, the Court must hold that Gold's statute of limitations affirmative defense extinguished the mortgage debt or rendered commencement of the 2018 Foreclosure Action frivolous and a sham.  This is not true as a matter of New York law because (1) the statute of limitations does not discharge a debt, it only bars a remedy (Defs. Br., at p. 1-2) and (2) a waivable procedural bar cannot convert an otherwise meritorious lawsuit into a frivolous one.  *Id.*  Such a holding would defy the purpose of the FDCPA and violate Constitutionally protected rights by transforming an affirmative defense into an element of the *prima facie* case and punishing losing litigants for exercising First Amendment rights.

### A.    *Midland Funding, LLC v. Johnson* is Controlling

Gold's claims fail as a matter of law because he does not allege that there was any misrepresentation of the debt.  Gold has not and cannot dispute that the debt underlying the 2018 Foreclosure Action was due and owing.  The Supreme Court, on point, has recognized that the expiration of statute of limitations does not extinguish a debt.  *See Midland Funding , LLC v. Johnson*, 137 S. Ct. 1407, 1411 (2017).  In *Midland Funding*, the Supreme Court held that a debt collector's filing of a proof of claim in bankruptcy where the debt is time-barred is not a violation of the FDCPA.  *Id.*  The Supreme Court instructed that state law controls the inquiry and observed that, "the law of many States, provides that a creditor has the right to payment of a debt even after the limitations period has expired."  *Id.*  The Court emphasized that bankruptcy law -- like New York law -- treats the statute of limitations as an affirmative-defense to recovery of a debt.  *Id.* at 1412 ("The law has long treated unenforceability of a claim (due to the expiration of the limitations period) as an affirmative defense.").

The reasoning of *Midland Funding* controls.  Even if a claim is not ultimately enforceable, that does not render it misleading, deceptive, or a sham.  *See Id.* (stating there is "nothing misleading or deceptive in the filing of a proof of claim" even when the statute of limitations on the debt has expired).  Furthermore, in *Midland Funding*, the Supreme Court explained that one reason it would not create FDCPA

---

[2] Plaintiff has not plausibly alleged an alter-ego theory of liability.

[3] If the Court dismisses the FDCPA claims, the Court should decline to exercise supplemental jurisdiction over the state law claims.  *See Kolari v. New York-Presbyterian Hosp.,* 455 F.3d 118, 122 (2d Cir. 2006) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.").

liability for filing a proof of claim on a time-barred debt was because it shifts the burden to creditors to investigate the merits of *affirmative defenses* to recovering a debt, whereas the state law puts that burden on the debtor. *Id.* at 1415. That is exactly what Gold is asking of this Court – to shift the burden to BONY to assess the strength of his defenses before it could lawfully bring suit to recover a $600,000 mortgage debt.

The FDCPA was enacted to protect consumers from unscrupulous debt collectors – not to *de facto* change state law by shifting burdens, or to proscribe the exercise of legitimate rights. Many affirmative defenses are available to defendants facing foreclosure, especially in a court of equity and any of those defenses might ultimately succeed—as did Gold's here. However, creating FDCPA liability for an alleged consumer having succeeded on a defense would expose debt collectors to liability every time a consumer defeats a creditor's claim, require creditors to assess the merit of borrowers' defenses pre-suit, and open a Pandora's box of litigation. The Supreme Court declined the opportunity to establish this burden in *Midland Funding* and so should this Court here.

B.    <u>*Arias v. Gutman. Mintz, Baker & Sonnenfeldt* is Inapplicable</u>

The Second Circuit's decision in *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128 (2d Cir. 2017) does not foreclose Defendants' arguments regarding the applicability of *Midland Funding*. In *Arias*, a judgment debtor (Arias) received notice that his bank account had been garnished and certain funds frozen but contended that the funds were exempt from execution as Social Security Income (SSI) and advised the judgment creditor's counsel of same. *Id.* at 132. Although Arias even supplied copies of bank statements showing all deposits in the account were from SSI, defendant instructed him to make a payment on the debt to have the frozen funds released. *Id.* Arias submitted an exemption claim form pursuant to a statutory scheme and the judgment creditor made a motion to the court objecting to the debtor's claim. *Id.* at 132. At the hearing on the exemption claim, when Arias showed the state court the same bank records he had previously given defendant, counsel withdrew its objection and conceded all funds were exempt from execution as SSI. *Id.* at 133-34.

The Second Circuit, reversing the dismissal below, found that the defendant debt collector, the judgment creditor's counsel: (1) made material misrepresentations regarding the exemption of the SSI funds in litigation papers, *Id.* at 137; (2) had an affirmative statutory duty as a matter of New York law to assess whether the funds it garnished were exempt under New York law, *Id.* at 139; and (3) violated the statute and its statutory duty when it refused to recognize debtor's funds were exempt and release them as the statute affirmatively required, *Id.* at 139. *Arias* is not applicable here because:

1.   The New York statutory garnishment scheme in *Arias*, placed the burden on the creditor to establish its right to the debtor's funds, *Id.* at 132, whereas here BONY already had a right to payment of the $600,000 mortgage -- and sought to enforce that right in court – while the burden to establish the statute of limitations defense was on Plaintiff.

April 30, 2019
Page 4

    2.   In *Arias*, there were multiple material and express misrepresentations by the debt collector which violated the FDCPA. For example, even though defendant knew every SSI dollar in Arias's account was exempt, in an affirmation filed with the court the defendant debt collector represented, "[t]he comingling of personal funds with exempt funds transforms the opening balance into personal; and non-exempt monies." *Id.* at 133. The statement was utterly false because no personal funds had been deposited. Here, Gold does not allege any such misrepresentation.

    3.   The debt collector in *Arias* violated New York law. The statutory exemption scheme did not just exempt certain funds or give the creditor a right to object to a claim of exemption, the statute affirmatively required that the funds be released if shown to be exempt and then the creditor could object if it had a good faith basis. *Id.* at 139. This placed a good faith duty on the creditor to determine whether the funds were exempt and release them if they were not. Here, BONY had no such duty under New York law.

The situation in *Arias* was much different than here. For example, here the statute of limitations Gold raised was a waivable defense while in *Arias* the SSI exemption was not waivable because even if the debtor did not object to his SSI funds being seized, seizure would still be unlawful. *See also* N.Y. C.P.L.R. § 5222-a(d) ("The burden of proof shall be upon the judgment creditor to establish the amount of funds that are not exempt.").

The *Arias* court touched on *Midland Funding*, but found that garnishment of a bank account was unique with less protection than a bankruptcy proceeding. *Arias*, 875 F.3d at 137. In fact, as discussed in *Arias*, almost the whole garnishment proceeding is extra-judicial and the state court is only involved at the tail-end if the creditor objects to the exemption. *Id.* at 132. In comparison, a "state foreclosure process is highly regulated and court controlled." *Derisme v. Hunt Leibert Jacobson P.C.,* 880 F. Supp. 2d 339, 365 (D. Conn. 2012). Foreclosure actions are more akin to a consumer bankruptcy proceeding in that there are considerable and *bona fide* protections to the debtor. Indeed, in *Obduskey* the Supreme Court recently recognized the protections to foreclosure defendants and exempted mortgage creditors from FDCPA liability in nonjudicial foreclosures altogether, as discussed in the next section.

Regardless, the critical fact of *Arias* remains unchanged: the creditor's counsel made patently and outrageously false misrepresentations and violated New York law in an effort to garnish the debtor's SSI funds – which were exempt by law. Nothing of the sort is even alleged to have happened here.

## II.   Under The Supreme Court's Reasoning in *Obduskey*, a Party Foreclosing a Mortgage is not a "Debt Collector" Under the FDCPA and Not Liable

In *Obduskey v. McCarthy & Holthus LLP*, the Supreme Court held that a law firm representing a secured lender to nonjudicially foreclose a mortgage was not a "debt collector" under the FDCPA. Limiting its decision to nonjudicial foreclosures, the Supreme Court declined to answer whether parties principally engaged in

April 30, 2019
Page 5

enforcing security interests in judicial actions were similarly exempt.  However, the Supreme Court did reject the reasoning of the Second Circuit in *Cohen v. Rosicki, Rosicki & Assocs, P.C.*, holding for this Circuit that enforcers of security interest are "debt collectors" under the FDCPA.  Moreover, the Supreme Court endorsed what had been the controlling logic of most district judges in the Second Circuit prior to *Cohen*.  In light of *Obduskey*, the holding and reasoning of *Cohen* no longer applies.

A.    The *Obduskey* Rationale Focuses on the Definition of "Debt Collector"

The *Obduskey* decision stems from a prior suit by the homeowner, Obduskey to stop nonjudicial foreclosure proceedings when he disputed the debt under the FDCPA.  139 S. Ct. 1029, at 1035.  The district court dismissed the case, holding that the law firm was not a "debt collector" within the meaning of the FDCPA because it was enforcing a security interest.  *Id.*  The Supreme Court affirmed the Tenth Circuit's reversal, holding that law firms (or other entities) engaged in the enforcement of a security interest in nonjudicial foreclosure proceedings are not debt collectors subject to the FDCPA.  To arrive at the holding, the Supreme Court looked to the text of the statute and the legislative history and reasoned that  the explicit inclusion of security interest enforcers as entities subject to FDCPA liability in one specific section meant that Congress intended to exclude them from the definition of debt collector all the other sections.  Further, the Court opined on the judicial protections inherent in nonjudicial foreclosure proceedings.

B.    The Rationale of *Cohen* Rejected the Distinction Now Expressly Recognized in *Obduskey*

Prior to the Second Circuit decision in *Cohen*, "[t]he majority of courts in this Circuit that have considered this issue have held that the enforcement of a security interest through foreclosure proceedings that do not seek monetary judgments against debtors is not debt collection for purposes of the FDCPA." *Hill v. DLJ Mortg. Capital, Inc.,* No. 15-cv-3083 (SJF) (AYS), 2016 WL 5818540, at *7 (E.D.N.Y. Oct. 5, 2016), aff'd, 689 Fed. App'x 97 (2d Cir. 2017*).*  The reasoning of these courts was spot-on with *Obduskey*.  But *Cohen* reversed the majority of the Second Circuit district judges and held that FDCPA "liability is defined not in terms of whether the relief sought is money or property, but in terms of whether the debt collect's collection is in connection with that consumer's obligation to pay.  In other words, the FDCPA itself does not make a distinction between an obligation itself grounded in money or property[.]" 897 F.3d 75 at 83.

On the contrary now, the Supreme Court said in *Obduskey* that there is such a distinction to be drawn in the FDCPA.  Although the *Obduskey* opinion did not itself reach whether there is FDCPA liability for *judicial* enforcement of security interests, it explicitly rejected the reasoning underlying *Cohen* and recognized the statutory distinction.  So, after *Obduskey*, the *Cohen* court was wrong because the FDCPA does explicitly exempt liability for enforcement of nonjudicial security interests in all but one subsection and does draw the distinction the *Cohen* court rejected.  The reasoning of the majority of the district judges in this Circuit pre-*Cohen*, which was in full agreement with *Obduskey* has now been approved by the Supreme Court in

April 30, 2019
Page 6

*Obduskey*. And the opposite is also true, the Second Circuit's rejection of that reasoning has been abrogated.[4]

Finally, *Cohen* held that the purpose of every mortgage foreclosure is to obtain payment of the underlying debt and therefore all foreclosures are subject to FDCPA liability. The Supreme Court held the opposite and thus not every enforcement of a security interest--particularly with respect to residential foreclosure—subjects creditors to FDCPA liability. Were the Second Circuit to revisit *Cohen* in light of *Obduskey*, the outcome would be different and in line with *Obduskey*.

### C.     BONY Never Sought a Deficiency Judgment

Lastly, BONY did not seek a deficiency judgment in the 2018 Foreclosure Action. BONY literally only sought to enforce its security interest. There is no meaningful distinction between a nonjudicial foreclosure and a judicial foreclosure that does not seek a deficiency judgment. The Supreme Court noted in *Obduskey* that the nonjudicial foreclosure process in Colorado provided protections for homeowners—as does New York, evidenced by, among substantial other protections, a separate civil division part dedicated to protections for homeowners.

### III.   The NY General Business Law is Not Applicable to the Letters and The § 349 Count Should Be Dismissed

The Court should decline to consider the NY GBL count if it dismisses the FDCPA count. Although the allegations related to the Letters are statutorily time barred under the FDCPA and not the NY GBL, there are limited circumstances when a federal court should exercise supplemental jurisdiction after dismissing all federal claims and this is not one of those circumstances. *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 404 (2d 2017) (Calabresi, J., concurring) ("It is important to emphasize that when appellate courts review district courts' decisions to exercise supplemental jurisdiction after all federal claims have been dismissed, the default rule is that federal courts should not decide related state-law claims unless there is good reason for doing so."). No diversity jurisdiction exists in this action as both Plaintiff and Defendant SDB are citizens of New York. *See* Amended Complaint (D.E. 12).

In the event that the Court does reach the NY GBL count 12(b)(6) analysis, it should dismiss this count as well. To state a claim pursuant to § 349, a plaintiff must allege (1) that the defendant's acts were consumer oriented; (2) that the acts or practices are "deceptive or misleading in a material way," and (3) that the plaintiff has been injured as a result. *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324, 774 N.E.2d 1190, 746 N.Y.S.2d 858 (2002).

---

[4] A second aspect of Cohen that Obduskey obviated is the Second Circuit's reliance on the FDCPA venue provision. *Id.* at 83. The Supreme Court observed that focusing on that provision "ma[d]e too much of too little." *Obduskey*, 1039. Put simply, the Court held that just because the Act anticipated that a debt collector could bring an action relating to real property does not mean that entities become debt collectors by bringing such action. *Id.*

April 30, 2019
Page 7

A.  The Letters are Not Consumer Oriented

To be consumer oriented, defendant's "acts or practices must have a broad impact on consumers at large." *New York Univ. v Continental Ins. Co.*, 87 N.Y.2d 308, 320, 662 N.E.2d 763, 639 N.Y.S.2d 283 (1995).  For example, a dispute between an insurer and insured about policy coverage is not a consumer-oriented claim.  *Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121 (2d Cir. 2000). The Letters are not consumer oriented and affect only Gold with no broad impact on consumers at large.  These were individualized letters sent to one person.  Gold only makes a barebones, conclusory allegation that the Letters were consumer oriented without alleging any facts to support that conclusion.  As a matter of law, Gold fails to state a claim because even viewing the facts in the most favorable light towards him, there is no allegation to support the Letters were consumer oriented.

B.  A Foreclosure Lawsuit is not Consumer Oriented

Commencement of the 2018 Foreclosure Action would not be actionable under NY GBL. The Eastern District has specifically held that a GBL § 349 claim premised on the actions of a mortgage holder filing a foreclosure fails to state a claim because it is not consumer-oriented conduct.  *See Rice v. Schaefer,* 2018 U.S. Dist. LEXIS 167152 at *16-17 (E.D.N.Y. Sept. 27, 2018).  In *Angermeir v. Cohen*, 14 F.Supp 3d 134 (S.D.N.Y. 2014) the court held that filing a lawsuit was not "consumer oriented" under GBL 349 and the court dismissed plaintiff's claim.  *Id.* at 156-57.  Here, instituting a foreclosure lawsuit is similarly not "consumer oriented."  *See id.* (holding that even allegations of "false statements" and "fraud on the court[s]" fail to plead a consumer-oriented conduct under N.Y. Gen. Bus. Law § 349).

In *Midland Funding, LLC v Giraldo*, the question before the court, one of first impression, was: "May a debt buyer, suing as the alleged assignee of a claimed consumer debt, be countersued for violating GBL §349 based on allegations that it commenced the lawsuit without any evidence that could prove the claim?"  961 N.Y.S.2d 743 (2013).  The court answered no when a lawsuit is commenced in good faith.  *Id.* at 756 (stating that "allegations of liability in an assigned debt matter may not be deemed "deceptive" when a debt buyer commences a lawsuit, in good faith, without having proof in hand, as long as evidence supporting the claim is readily available.").  No bad faith was ever alleged here and nor could it be, because there was no misrepresentation about the debt. The lawsuit was objectively commenced in good faith and the assertion of an affirmative defense does not change that.

As discussed above, the assertion of an affirmative defense does not distinguish the debt or make the initial lawsuit frivolous.[5]  This is not a situation where the creditor filed a foreclosure action without possession of a note or valid assignment.  Nor is it a situation where there was any misrepresentation about the amount of debt owed.  BONY had the right to institute the foreclosure just as Gold had the right to assert an affirmative defense.  Gold's defense happen to be

---

[5] Indeed, the litigation related to the original foreclosure of Gold's property is still ongoing, thus demonstrating merit.

April 30, 2019
Page 8

successful but that does not and cannot transform the valid 2018 Foreclosure Action into a frivolous lawsuit warranting NY GBL liability.

C. <u>Sending a Statutorily and Contractually Mandated Letter and Notice is Not Deceptive or Misleading</u>

Defendants cannot be liable under the NY GBL for sending a statutorily prescribed letter because such letter cannot be deceptive. The October 5 Letter (annexed hereto as Exhibit 1) was sent in compliance with NY RPAPL § 1304 (a copy of the statute is annexed as Exhibit 2). Defendants' October 5 Letter substantially recites the exact statutorily mandated text and, therefore *per se* cannot be deceptive in violation of NY GBL. The October 6 Letter (annexed hereto as Exhibit 3) was sent in compliance with BONY's contractual obligation under paragraph 22 of Plaintiff's mortgage loan (a copy of the mortgage is annexed as Exhibit 4). of Defendant's letter substantially states precisely the notice that Plaintiff was entitled to receive and BONY was obligated to send. These Letters were conditions precedent to BONY filing a lawsuit, without which BONY's lawsuit could have been dismissed. *See Citibank, N.A. v Conti-Scheurer*, 2019 N.Y. App. Div. LEXIS 2908, *9, 2019 NY Slip Op 02846, 3, 2019 WL 1646460 (noting that several cases held that a defendant in a mortgage foreclosure action can establish her or his prima facie entitlement to judgment as a matter of law dismissing the complaint simply by submitting an affidavit denying receipt of a RPAPL 1304 notice).

Consequently, neither a letter with text specifically prescribed by statute, nor a notice the Plaintiff contractually agreed to accept can be deceptive or misleading and violate the NY GBL. *See U.S. Bank National Assoc. v Fields*, 2012 N.Y. Misc. LEXIS 4025, *27, 2012 NY Slip Op 32204(U), 9 (striking affirmative defense by borrower in mortgage foreclosure that lender violated NY GBL where, among other things, lender complied with RPAPL 1304 notice). Moreover, since these Letters were conditions precedent to BONY's exercise of its right to petition the Court under the First Amendment, indirectly proscribing the Letters through application of the FDCPA would result in the tail wagging the dog and violate the *Noerr-Pennington* doctrine.[6]

---

[6] Defendants renew their argument that they are immune from liability in this entire lawsuit because all Defendants were attempting to do was exercise First Amendment rights by filing a lawsuit that was not a sham. Using the FDCPA to penalize Defendants for doing that violates the most basic of Constitutional rights. *See Singh v. NYCTL 2009-A Tr.*, 683 F. App'x 76, 77 (2d Cir. 2017). ("[T]he Noerr-Pennington doctrine encompasses all petitioning activity, including 'concerted actions before courts and administrative agencies' and 'concerted efforts incident to litigation, such as pre-litigation threat letters and settlement offers.'").

April 30, 2019
Page 9

## IV.  Conclusion

For these foregoing reasons, Defendants respectfully request that the Court dismiss this action.

We thank the Court for its consideration.

Respectfully submitted,

/s Adam M. Swanson

# <u>EXHIBIT 1</u>



October 5, 2017

 YOSEF GOLD
1301 47TH ST
BROOKLYN, NY 11219

**Account Number:** 0016092942
**Property Address:** 1251 42ND ST 5 5
BROOKLYN, NY 11219

Dear Customer(s):

YOU MAY BE AT RISK OF FORECLOSURE.
PLEASE READ THE FOLLOWING NOTICE CAREFULLY

As of October 5, 2017, your home is 1922 days and $307,409.68 in default.  Under New York State Law, we are required to send you this notice to inform you that you are at risk of losing your home.

Attached to this notice is a list of government approved housing counseling agencies in your area which provide free counseling. You can also call the NYS Office of the Attorney General's Homeowner Protection Program (HOPP) toll-free consumer hotline to be connected to free counseling services in your area at 1-855-HOME-456 (1-855-466-3456), or visit their website at http://www.aghomehelp.com/. A statewide listing by county is also available at http://www.dfs.ny.gov/consumer/mortg_nys_np_counseling_agencies.htm.   Qualified free help is available; watch out for companies or people who charge a fee for these services.

Housing counselors from New York-based agencies listed on the website above are trained to help homeowners who are having problems making their mortgage payments and can help you find the best option for your situation. If you wish, you may also contact us directly at 800-635-9698 and ask to discuss possible options.

While we cannot assure that a mutually agreeable resolution is possible, we encourage you to take immediate steps to try to achieve a resolution.  The longer you wait the fewer options you may have.



If you have not taken any action to resolve this matter within 90 days from the date this notice was mailed, we may commence legal action against you (or sooner if you cease to live in the dwelling as your primary residence.)

If you need further information, please call the New York State Department of Financial Services' toll-free helpline at 800-269-0990 or visit the Department's website at http://www.dfs.ny.gov.

IMPORTANT: You have the right to remain in your home until you receive a court order telling you to leave the property.  If a foreclosure action is filed against you in court, you still have the right to remain in the home until a court orders you to leave.  You legally remain the owner and are responsible for the property until the property is sold by you or by order of the court at the conclusion of any foreclosure proceedings. This notice is not an eviction notice, and a foreclosure action has not yet been commenced against you.

Sincerely,

Select Portfolio Servicing, Inc.

Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición  para contestar cualquier pregunta. Llamenos al numero 800-831-0118 y seleccione/marque la opción 2.

This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.

New York City - Collection Agency License # 1170514

## Foreclosure Prevention Counseling

If you are having trouble paying your mortgage or are at risk of foreclosure, contact a not-for-profit housing counselor in your area. Not-for-profit housing counselors provide free, professional advice. They can help you assess your options, negotiate with your lender and find free legal services and other resources in your area. The following not-for-profit housing counseling organizations have received some type of public funding to provide foreclosure prevention services. It's always a good idea to call in advance to see if an appointment is necessary and what, if any, documents you should bring with you.

> *Be wary of companies and individuals who promise to help save your home from foreclosure in exchange for the payment of fees upfront. New York law prohibits the collection of such fees except in limited circumstances.*

If you live in New York City, you can contact the Center for New York City Neighborhoods (CNYCN) at 646-786-0888. CNYCN partners with more than 50 agencies and coordinates foreclosure prevention and intervention services in all five boroughs. It can help you find the right services for your needs.

Please note that the State cannot guarantee the advice of any individual housing counseling agency. However, many of these agencies have adopted National Industry Standards for Homeownership Counseling to ensure that homeowners receive quality and professional counseling.

Also note that the list may not include all publicly funded agencies in New York that are providing foreclosure counseling services. The New York Division of Homes & Community Renewal is continually working to add new agencies to the list.

For more information on avoiding foreclosure visit the New York Department of Financial Services website at www.dfs.ny.gov.

The U.S. Department of Housing and Urban Development (HUD) also sponsors housing counseling agencies that can provide advice on preventing foreclosure. HUD approved home ownership counseling may be available to you. You should call (800) 569-4287 or TDD (800) 877-8339, or go to HUD's website at http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm to find the HUD-approved housing counseling agency nearest you.



## New York State Non-Profit Housing Counseling Agencies Providing
## Services to Homeowners in Default and Foreclosure - Statewide Listing by County

Compiled by the Empire Justice Center (Updated December 2016)

| COUNTY | AGENCY | ADDRESS | CONTACT INFO | NOTES |
|---|---|---|---|---|
| Albany | Affordable Housing Partnership | 255 Orange St., Albany, NY 12210 | 518-434-1730 | HOPP Also serves surrounding areas |
| | Albany County Rural Housing Alliance | 24 Martin Road, Voorheesville, NY 12186 | 518-765-2425 | HOPP Also serves surrounding areas |
| | United Tenants of Albany | 33 Clinton Ave., Albany, NY 12207 | 518-436-8997 | HOPP For tenants whose buildings are in the process of foreclosure or have been foreclosed on |
| | Better Neighborhoods, Inc. | 986 Albany St., Schenectady, NY 12307 | 518-372-6469 | HOPP Spanish speaking staff available |
| | Clearpoint Credit Counseling Solutions | 2 Computer Drive West, Albany, NY 12205 | 1-800-750-2227 | Formerly known as Consumer Credit Counseling Service |
| | NYS Office For People With Developmental Disabilities (OPWDD) | 44 Holland Ave. Albany, NY 12229 | 518-473-1973 | Serving all NYS residents with developmental disabilities and their families |
| Allegany | ACCORD | 84 Schuyler St., Belmont, NY 14813 | 585-268-7605 | HOPP |
| | Neighborhood Housing Services of Buffalo | 1937 South Park Ave. Buffalo, NY 14220 | 716-823-3630 | Also serving surrounding counties |
| Bronx | Neighborhood Housing Services- North Bronx | 1451 East Gun Hill Rd., Bronx, NY 10469 | 718-881-1180 | HOPP Spanish speaking staff available |
| | MHANY Management, Inc. | 1 Metro Tech Center North 11th Floor, Brooklyn, NY 11201 | 718-246-8080 ext 203 | HOPP Spanish speaking staff available |
| | Housing and Family Services of Greater New York, Inc. | 415 Albemarle Rd., Brooklyn, NY 11218 | 718-435-7585 | HOPP Spanish and French Creole speaking staff available |
| | Grow Brooklyn, Inc. | 1474 Myrtle Ave., Brooklyn, NY 11237 | 718-418-8232 ext. 206 | HOPP Spanish and Bengali speaking staff available |
| | Neighborhood Housing Services NYC | 848 Concourse Village West, Bronx, NY 10451 | 718-992-5979 | Spanish speaking staff available |
| | NYC Commission on Human Rights | 1932 Arthur Avenue, Room 203A, Bronx, NY 10457 | 718-579-6728 OR 718-579-6900 | Spanish speaking staff available |



| Broome | Metro Interfaith Housing Management Corp. | 21 New St., Binghamton, NY 13903 | 607-772-6766 | HOPP |
|---|---|---|---|---|
| | Clearpoint Credit Counseling Solutions | The Metro Center, 49 Court St., Binghamton, NY 13901 | 1-800-750-2227 | |
| Cattaraugus | Chautauqua Opportunities, Inc. | 402 Chandler St., Jamestown, NY 14701 | 716-661-9430 | HOPP |
| | ACCORD | 84 Schuyler St., Belmont, NY 14813 | 585-268-7605 | HOPP |
| | Neighborhood Housing Services of South Buffalo | 1937 South Park Ave., Buffalo, NY 14220 | 716-823-3630 | |
| Cayuga | Home Headquarters, Inc. | 538 Erie Blvd West, Syracuse NY 13204 | 315-474-1939 | HOPP Spanish speaking staff available |
| | Clearpoint Financial Solutions | 5794 Widewaters Parkway, Syracuse, NY 13214 | 1-877-412-2227 | Formerly known as Consumer Credit Counseling Service of Central NY |
| Chautauqua | Chautauqua Opportunities, Inc. | 402 Chandler St., Jamestown, NY 14701 | 716-661-9430 | HOPP |
| | Chautauqua Home Rehabilitation and Improvement Corp. (CHRIC) | 2 Academy St., Mayville, NY 14757 | 716-753-4650 | Spanish speaking staff available |
| | Neighborhood Housing Services of South Buffalo | 1937 South Park Ave., Buffalo, NY 14220 | 716-823-3630 | |
| Chemung | Arbor Housing and Development | 26 Bridge St., Corning, NY 14830 | 607-654-7487 | HOPP |
| | Catholic Charities of Chemung | 215 East Church St., Suite 101, Elmira, NY 14901 | 607-734-9784 | HOPP |
| Chenango | Metro Interfaith Housing Management Corp. | 21 New St., Binghamton, NY 13903 | 607-772-2766 | HOPP |
| | Clearpoint Credit Counseling Solutions | The Metro Center, 49 Court St., Binghamton, NY 13901 | 1-800-750-2227 | |
| Clinton | Friends of the North Country | 1 Mill St., Keeseville, NY 12944 | 518-834-9606 | HOPP |
| | Housing Assistance Program of Essex County (HAPEC) | 103 Hand Ave., Elizabethtown, NY 12932 | 518-873-6888 | HOPP |
| Columbia | Galvan Housing Resources | 252 Columbia St., Hudson, NY 12534 | 518-822-0707 | HOPP |
| Cortland | Home Headquarters, Inc. | 538 Erie Blvd West, Syracuse NY 13204 | 315-474-1939 | HOPP Spanish speaking staff available |

| | Cortland Housing Assistance Council, Inc. | 36 Taylor St. Cortland, NY 13045 | 607-753-8271 | |
| | Clearpoint Credit Counseling Solutions | The Metro Center, 49 Court St., Binghamton, NY 13901 | 1-800-750-2227 | |
| | Western Catskills Community Revitilization Council | 125 Main St., Suite A, Stamford, NY 12167 | 607-652-2823 | HOPP |
| **Delaware** | RUPCO | 301 Fair St. Kingston, NY 12401 | 845-331-9860 | HOPP Spanish speaking staff available |
| | Delaware Opportunities, Inc. | 35430 State Hgwy. 10 Hamden, NY 13782 | 607-746-1650 | |
| | Clearpoint Credit Counseling Solutions | The Metro Center, 49 Court St., Binghamton, NY 13901 | 1-800-750-2227 | |
| **Dutchess** | Hudson River Housing | 291 Mill St Poughkeepsie, NY 12601 | 845-454-9288 | HOPP |
| | Putnam County Housing Corp. | 11 Seminary Hill Rd., Carmel, NY 10512 | 845-225-8493 | HOPP Serving Southern section of county |
| **Erie** | Belmont Housing Resources | 1195 Main St. Buffalo, NY 14209 | 716-884-7791 | HOPP |
| | West Side NHS, Inc. | 359 Connecticut St., Buffalo, NY 14213 | Tuesdays and Wednesdays at (716) 885-2344, Thursdays and Fridays at (716) 877-3910 | HOPP |
| | Buffalo Urban League | 15 Genesee Street Buffalo, NY 14203 | 716-250-2400 | HOPP |
| | Chautauqua Opportunities, Inc. | 402 Chandler St., Jamestown, NY 14701 | 716-661-9430 | HOPP |
| | Consumer Credit Counseling Services of Buffalo, Inc. | 40 Gardenville Parkway, Suite 300, West Seneca, NY 14224 | 1-800-926-9685 or 716-712-2060 | HOPP |
| | Neighborhood Assistance Corp. of America | 135 Delaware Ave Ste 102 Buffalo, New York 14202-2410 | 716-834-6222 | |
| | Neighborhood Housing Services of South Buffalo | 1937 South Park Ave., Buffalo, NY 14220 | 716-823-3630 | |
| **Essex** | Friends of the North Country | 1 Mill St., Keeseville, NY 12944 | 518-834-9606 | HOPP |
| | Housing Assistance Program of Essex County (HAPEC) | 103 Hand Ave., Elizabethtown, NY 12932 | 518-873-6888 | HOPP |
| | Homefront Development Corp. | 568 Lower Allen St., Hudson Falls, NY 12839 | 518-747-8250 | |



| | | | | |
|---|---|---|---|---|
| **Franklin** | Friends of the North Country | 1 Mill St., Keeseville, NY 12944 | 518-834-9606 | HOPP |
| | Housing Assistance Program of Essex County (HAPEC) | 103 Hand Ave., Elizabethtown, NY 12932 | 518-873-6888 | HOPP |
| | Franklin County Community Housing Council Inc. | 337 West Main St. Malone, NY 12953 | 518-483-5934 | HOPP |
| | Clearpoint Credit Counseling Solutions | 215 Washington St. Suite 005, Watertown, NY 13601 | 1-800-750-2227 | |
| **Fulton** | Better Neighborhoods, Inc. | 120 Emmons St., Schenectady, NY 12304 | 518-372-6469 | HOPP Spanish speaking staff available |
| | UNHS NeighborWorks Homeownership Center | 1611 Genesee Street, Utica, NY 13501 | 315-724-4197 | HOPP |
| **Genesee** | Consumer Credit Counseling Services of Rochester, Inc. | 1000 University Ave., Suite 900 Rochester, NY 14607 | 1-888-724-2227 | HOPP |
| | Belmont Housing Resources | 1195 Main St., Buffalo, NY 14209 | 716-884-7791 | HOPP |
| | Consumer Credit Counseling Services of Buffalo, Inc. | 40 Gardenville Parkway, Suite 300, West Seneca, NY 14224 | 1-800-926-9685 or 716-712-2060 | |
| **Greene** | Albany County Rural Housing Alliance | 24 Martin Road, Voorheesville, NY 12186 | 518-765-2425 | HOPP |
| | RUPCO | 301 Fair St. Kingston, NY 12401 | 845-331-9860 | HOPP Spanish speaking staff available |
| | Western Catskills Community Revitalization Council | 125 Main St., Suite A, Stamford, NY 12167 | 607-652-2823 | HOPP |
| | Clearpoint Credit Counseling Solutions | 2 Computer Drive West, Albany, NY 12205 | 1-800-750-2227 | Formerly known as Consumer Credit Counseling Service of Central NY |
| **Hamilton** | Housing Assistance Program of Essex County (HAPEC) | 103 Hand Ave., Elizabethtown, NY 12932 | 518-873-6888 | HOPP |
| | Clearpoint Credit Counseling Solutions | 289 Genesee St., Utica, NY 13501 | 1-800-750-2227 | |
| | Homefront Development Corp. | 568 Lower Allen St., Hudson Falls, NY 12839 | 518-747-8250 | |
| **Herkimer** | UNHS NeighborWorks Homeownership Center | 1611 Genesee Street, Utica, NY 13501 | 315-724-4197 | HOPP |
| | Clearpoint Credit Counseling Solutions | 289 Genesee St., Utica, NY 13501 | 1-800-750-2227 | |

| | | | | |
|---|---|---|---|---|
| Jefferson | Home Headquarters, Inc. | 538 Erie Blvd West, Syracuse NY 13204 | 315-474-1939 | HOPP Spanish speaking staff available |
| | Clearpoint Credit Counseling Solutions | 215 Washington St. Suite 005, Watertown, NY 13601 | 1-800-750-2227 | |
| Kings | Cypress Hills Local Dev. Corp. | 625 Jamaica Avenue, Brooklyn, NY 11208 | 718-647-2800 | HOPP Spanish speaking staff available |
| | IMPACCT Brooklyn | 1000 Dean St., Brooklyn, NY 11238 | 718-522-2613 | HOPP |
| | Grow Brooklyn, Inc. | 1474 Myrtle Ave., Brooklyn, NY 11237 | 718-418-8232 | HOPP Spanish and Bengali speaking staff available |
| | Bridge Street Dev. Corp. | 460 Nostrand Ave., Brooklyn, NY 11216 | 718-636-7596 | HOPP Spanish Speaking staff available |
| | MHANY Management, Inc. | 1 Metro Tech Center North 11th Floor, Brooklyn, NY 11201 | 718-246-8080 | HOPP Spanish speaking staff available |
| | Neighbors Helping Neighbors (NHN) | 621 Degraw St., Brooklyn, NY 11217 | 718-237-2017 | HOPP Spanish speaking staff available |
| | Housing and Family Services of Greater New York, Inc. | 415 Albemarle Rd., Brooklyn, NY 11218 | 718-435-7585 | HOPP Spanish and French Creole speaking staff available |
| | Neighborhood Housing Services of Bedford-Stuyvesant | 1012 Gates Ave., 2nd Floor, Brooklyn, NY 11221 | 718-919-2100 | HOPP |
| | CAMBA | 1720 Church Ave., 2nd Floor, Brooklyn, NY 11226 | 718-287-0010 | HOPP |
| | Neighborhood Housing Services of Brooklyn | 2806 Church Ave., Brooklyn, NY 11226 | 718-469-4679 | HOPP Spanish speaking staff available |
| | Greater Sheepshead Bay Dev. Corp. | 2105 East 22nd St., Brooklyn, NY 11229 | 718-332-0520 | |
| | Southern Brooklyn Community Organization | 4006 18th Ave., Brooklyn, NY 11218 | 718-435-1300 | |
| | Brooklyn Neighborhood Improvement Association | 1482 Saint James Pl., Suite 1C, Brooklyn, NY 11213 | 718-773-4116 | |
| | Council of Jewish Organizations of Flatbush, Inc. | 1523 Avenue M, Brooklyn, NY 11230 | 718-377-2900 ext 7625 | Arabic, Russian and Spanish speaking staff available |
| | Money Management International, Inc. | 26 Court St., Suite 2610, Brooklyn, NY 11242 | 1-866-232-9080 | Spanish speaking staff available |



| | | | |
|---|---|---|---|
| | GreenPath Debt Solutions | 175 Remsen St., Suite 1102, Brooklyn, NY 11201 | 866-285-4033 | |
| | NY Commission of Human Rights- Brooklyn | 275 Livingston St., Brooklyn, NY 11217 | 718-722-3130 | Spanish speaking staff available |
| **Lewis** | Home Headquarters, Inc. | 538 Erie Blvd West, Syracuse NY 13204 | 315-474-1939 | HOPP |
| | Clearpoint Credit Counseling Solutions | 215 Washington St. Suite 005, Watertown, NY 13601 | 1-800-750-2227 | |
| **Livingston** | Consumer Credit Counseling Services of Rochester, Inc. | 1000 University Ave., Suite 900 Rochester, NY 14607 | 1-888-724-2227 | HOPP |
| | The Housing Council | 75 College Ave., 4th Floor, Rochester, NY 14607 | 585-546-3700 | HOPP |
| **Madison** | Home Headquarters, Inc. | 538 Erie Blvd West, Syracuse NY 13204 | 315-474-1939 | HOPP Spanish speaking staff available |
| | UNHS NeighborWorks Homeownership Center | 1611 Genesee Street, Utica, NY 13501 | 315-724-4197 | HOPP |
| | Community Action Program for Madison County | 3 East Main St., Morrisville, NY 13408 | 315-684-3144 | ASL trained staff available |
| | Clearpoint Credit Counseling Solutions | 289 Genesee St., Utica, NY 13501 | 1-800-750-2227 | |
| **Monroe** | Consumer Credit Counseling Services of Rochester, Inc. | 1000 University Ave., Suite 900 Rochester, NY 14607 | 1-888-724-2227 | HOPP |
| | Marketview Heights Association | 308 North Street, Rochester, NY 14605 | 585-423-1540 | HOPP |
| | The Housing Council | 75 College Ave., 4th Floor, Rochester, NY 14607 | 585-546-3700 | HOPP |
| | Urban League of Rochester | 265 North Clinton Ave., Rochester, NY | 585-325-6530 | |
| **Montgomery** | Better Neighborhoods, Inc. | 120 Emmons St., Schenectady, NY 12304 | 518-372-6469 | HOPP Spanish speaking staff available |
| | UNHS NeighborWorks Homeownership Center | 1611 Genesee Street, Utica, NY 13501 | 315-724-4197 | HOPP |
| **Nassau** | American Debt Resources, Inc. | 248C Larkfield Road, East Northport, NY 11731 | 1-800-498-0766 | HOPP Spanish speaking staff available |
| | Community Development Corporation of Long Island | 333 No Main St., Freeport, NY 11520 | 631-471-1215 x158 | HOPP Spanish speaking staff available |

| | | | | |
|---|---|---|---|---|
| | Central Islip Civic Council | 68 Wheeler Road Central Islip NY, 11722 | 631-348-0669 | HOPP |
| | Debt Counseling Corp. | 3033 Express Dr. N, Hauppauge, NY 11749 | 1-888-354-6332 ext. 316 | HOPP Spanish speaking staff available |
| | Hispanic Brotherhood of Rockville Centre, Inc. | 59 Clinton Ave., Rockville Centre, NY 11570 | 516-766-6610 | HOPP Spanish speaking staff available |
| | La Fuerza Unida, Inc. | 1 School St., Suite 302, Glen Cove, NY 11542 | 516-759-0788 | HOPP Spanish speaking staff available |
| | LIFE, Inc. | 112 Spruce St., Cedarhurst, NY 11516 | 516-374-4564 ext.1038 | HOPP Spanish speaking staff available |
| | Long Island Housing Partnership, Inc. | 180 Oser Ave., Hauppauge, NY 11788 | 631-435-4710 | HOPP Spanish speaking staff available |
| | Long Island Housing Services, Inc. | 640 Johnson Ave., Suite 8, Bohemia, NY 11716 | 631-567-5111 x383 | HOPP Spanish speaking staff available |
| | Safeguard Credit Counseling, Inc. | 67 Fort Salonga Rd. Northport, NY 11768 | 1-800-673-6993 | HOPP Spanish speaking staff available |
| New York | MHANY Management, Inc. | 1 Metro Tech Center North 11th Floor, Brooklyn, NY 11201 | 718-246-8080 | HOPP Spanish speaking staff available |
| | Grow Brooklyn, Inc. | 1474 Myrtle Ave., Brooklyn, NY 11237 | 718-418-8232 | HOPP Spanish and Bengali speaking staff available |
| | AAFE Community Development Fund, Inc. | 111 Division St., New York, NY 10002 | 212-964-2288 | Chinese and Korean speaking staff available |
| | Abyssinian Development Corp. | 2283 7th Avenue, New York, NY 10030 | 646-442-6545 | |
| | Neighborhood Housing Services of NYC | 307 West 36th St., 12th floor, New York, NY 10018 | 212-519-2500 | Spanish and Creole speaking staff available |
| | Harlem Congregations for Community Development | 2854 Frederick Douglass Blvd., New York, NY 10039 | 212-281-4887 ext. 206 or 231 | Spanish speaking staff available |
| | West Harlem Group Assistance, Inc. | 1652 Amsterdam Ave. New York, NY 10031 | 212-862-1399 | |
| | GreenPath Debt Solutions | One Penn Plaza, Suite 2108, New York, NY 10119 | 866-285-4059 | |
| Niagara | Belmont Housing Resources | 1195 Main St., Buffalo, NY 14209 | 716-884-7791 | HOPP |



| | West Side NHS | 203 Military Rd., Buffalo, NY 14207 | Tuesdays and Wednesdays at (716) 885-2344, Thursdays and Fridays at (716) 877-3910 | HOPP |
|---|---|---|---|---|
| | Consumer Credit Counseling Services of Buffalo, Inc. | 40 Gardenville Parkway, Suite 300, West Seneca, NY 14224 | 1-800-926-9685   or   716-712-2060 | HOPP |
| | Neighborhood Housing Services of South Buffalo | 1937 South Park Ave., Buffalo, NY 14220 | 716-823-3630 | |
| Oneida | UNHS NeighborWorks Homeownership Center | 1611 Genesee Street, Utica, NY 13501 | 315-724-4197 | HOPP |
| | Clearpoint Credit Counseling Solutions | 5794 Widewaters Parkway, Syracuse, NY 13214 | 1-800-750-2227 | |
| | Northeast Hawley Development Corp. | 101 Gertrude St., Syracuse, NY 13202 | 315-425-1032 | |
| Onondaga | Home Headquarters, Inc. | 538 Erie Blvd West, Syracuse NY 13204 | 315-474-1939 | HOPP Spanish speaking staff available |
| | Clearpoint Credit Counseling Solutions | 5794 Widewaters Parkway, Syracuse, NY 13214 | 1-800-750-2227 | |
| | Cooperative Federal Credit Union | 800 N. Salina St., Syracuse, NY 13208 | 315-476-5290 | Service for credit union members only |
| Ontario | Consumer Credit Counseling Services of Rochester, Inc. | 1000 University Ave., Suite 900 Rochester, NY 14607 | 1-888-724-2227 | HOPP |
| | Community Action in Self Help | 48 Water St., Lyons, NY 14489 | 315-946-6992 | HOPP |
| | Keuka Housing Council | 160 Main St. Penn Yan, NY 14527 | 315-536-8707 | HOPP |
| Orange | Hudson River Housing | 291 Mill St Poughkeepsie, NY 12601 | 845-454-9288 | HOPP |
| | Orange County Rural Development Advisory Corp. | 59b Boniface Drive, Pine Bush, NY 12566 | 845-713-4568 | HOPP |
| Orleans | Belmont Housing Resources | 1195 Main St., Buffalo, NY 14209 | 716-884-7791 | HOPP |
| | Consumer Credit Counseling Services of Buffalo, Inc. | 40 Gardenville Parkway, Suite 300, West Seneca, NY 14224 | 1-800-926-9685   or   716-712-2060 | HOPP |
| | Consumer Credit Counseling Service of Rochester, Inc. | 1000 University Ave., Suite 900 Rochester, NY 14607 | 1-888-724-2227 | HOPP |
| Oswego | Fulton Community Development Agency | 125 West Broadway, Fulton, NY 13069 | 315-593-7166 | HOPP |

| | | | | |
|---|---|---|---|---|
| | Oswego Housing Development Council, Inc. | 2971 County Rte. 26, Parish, NY 13131 | 315-625-4520 | |
| | Clearpoint Credit Counseling Solutions | 5794 Widewaters Parkway, Syracuse, NY 13214 | 1-800-750-2227 | |
| Otsego | UNHS NeighborWorks Homeownership Center | 1611 Genesee Street, Utica, NY 13501 | 315-724-4197 | HOPP |
| | Clearpoint Creidt Counseling Solutions | The Metro Center, 49 Court St., Binghamton, NY 13901 | 1-800-750-2227 | |
| Putnam | Housing Action Council | 55 South Broadway, Tarrytown, NY 10591 | 914-332-4144 | HOPP |
| | Putnam County Housing Corp. | 11 Seminary Hill Rd., Carmel, NY 10512 | 845-225-8493 | HOPP |
| Queens | Neighborhood Housing Services of Queens, CDC, Inc. | 60-20 Woodside Ave., Flushing, NY 11377 | 718-457-1017 | HOPP Spanish and French Creole speaking staff available |
| | Neighborhood Housing Services- Jamaica | 89-70 162nd St., Jamaica, NY 11432 | 718-291-7400 | HOPP Spanish speaking staff available |
| | MHANY Management, Inc. | 1 Metro Tech Center North 11th Floor, Brooklyn, NY 11201 | 718-246-8080 | HOPP Spanish speaking staff available |
| | Housing and Family Services of Greater New York, Inc. | 415 Albemarle Rd., Brooklyn, NY 11218 | 718-435-7585 | HOPP Spanish and French Creole speaking staff available |
| | NY Commission of Human Rights- Queens | 153-01 Jamaica Ave. Jamaica, NY 11432 | 718-657-2465 | Spanish speaking staff available |
| | GreenPath Debt Solutions | 80-02 Kew Gardens Road, Suite 710 Kew Gardens, NY 11415-3607 | 866-285-4036 | |
| | Margert Community Corporation | 325 Beach 37th Street Far Rockaway, NY 11691 | 718-471-3724 | |
| | Queens Community House | 108-25 62nd Drive, Forest Hills, NY 11375 | 718-592-5757 | |
| Rensselaer | Troy Rehabilitation and Improvement Program (TRIP) | 415 River St., Troy, NY 12180 | 518-690-0020 | HOPP |
| | United Tenants of Albany | 33 Clinton Ave., Albany, NY 12207 | 518-436-8997 | HOPP For tenants whose buildings are in process of being foreclosed or whose building has been foreclosed |
| | Albany County Rural Housing Alliance | 24 Martin Road, Voorheesville, NY 12186 | 518-765-2425 | HOPP |



| | Affordable Housing Partnership | 255 Orange St., Albany, NY 12210 | 518-434-1730 | HOPP |
|---|---|---|---|---|
| | Clearpoint Credit Counseling Solutions | 2 Computer Drive West, Albany, NY 12205 | 1-800-750-2227 | Formerly known as Consumer Credit Counseling Service of Central NY |
| Richmond | Northfield Community Local Dev. Corp. of Staten Island | 160 Heberton Ave. Staten Island, NY 10302 | 718-442-7351 | HOPP |
| | MHANY Management, Inc. | 1 Metro Tech Center North 11th Floor, Brooklyn, NY 11201 | 718-246-8080 | HOPP Spanish speaking staff available |
| | Neighborhood Housing Services, Staten Island | 770 Castleton Ave., Staten Island, NY 10310 | 718-442-8080 | Spanish speaking staff available |
| | NYC Commission on Human Rights- Staten Island | 60 Bay St. 7th Floor, Staten Island, NY 10301 | 718-390-8506 | Spanish speaking staff available |
| Rockland | Housing Action Council | 55 South Broadway, Tarrytown, NY 10591 | 914-332-4144 | HOPP |
| | Rockland Housing Action Coalition | 120-126 North Main St., Annex-First Floor, New City, NY 10956 | 845-708-5799 | HOPP Spanish, Creole, Hebrew, and ASL speaking staff available |
| Saratoga | Albany County Rural Housing Alliance | 24 Martin Road, Voorheesville, NY 12186 | 518-765-2425 | HOPP |
| | Affordable Housing Partnership | 255 Orange St., Albany, NY 12210 | 518-434-1730 | HOPP |
| | Troy Rehabilitation and Improvement Program (TRIP) | 415 River St., Troy, NY 12180 | 518-690-0020 | HOPP Serving residents of Southern Saratoga County |
| | Better Neighborhoods, Inc. | 120 Emmons St., Schenectady, NY 12304 | 518-372-6469 | HOPP Spanish speaking staff available |
| | Clearpoint Credit Counseling Solutions | 2 Computer Drive West, Albany, NY 12205 | 1-800-750-2227 | Formerly known as Consumer Credit Counseling Service of Central NY |
| | Homefront Development Corp. | 568 Lower Allen St., Hudson Falls, NY 12839 | 518-747-8250 | Serving residents of Northern Saratoga County |
| Schenectady | Better Neighborhoods, Inc. | 120 Emmons St., Schenectady, NY 12304 | 518-372-6469 | HOPP Spanish speaking staff available |
| | Affordable Housing Partnership | 255 Orange St., Albany, NY 12210 | 518-434-1730 | HOPP |
| | Albany County Rural Housing Alliance | 24 Martin Road, Voorheesville, NY 12186 | 518-765-2425 | HOPP |

| | | | |
|---|---|---|---|
| | Schenectady Community Action Program (SCAP) | 913 Albany St., Schenectady, NY 12307 | 518-374-9181 | For tenants whose buildings are in process of being foreclosed or whose building has been foreclosed |
| | Clearpoint Credit Counseling Solutions | 2 Computer Drive West, Albany, NY 12205 | 1-800-750-2227 | Formerly known as Consumer Credit Counseling Service of Central NY |
| Schoharie | Albany County Rural Housing Alliance | 24 Martin Road, Voorheesville, NY 12186 | 518-765-2425 | HOPP |
| | Better Neighborhoods, Inc. | 120 Emmons St., Schenectady, NY 12304 | 518-372-6469 | HOPP Spanish speaking staff available |
| | Western Catskills Community Revitilization Council | 125 Main St., Suite A, Stamford, NY 12167 | 607-652-2823 | HOPP |
| | Clearpoint Credit Counseling Solutions | 2 Computer Drive West, Albany, NY 12205 | 1-800-750-2227 | Formerly known as Consumer Credit Counseling Service of Central NY |
| Schuyler | Arbor Housing and Development | 26 Bridge St., Corning, NY 14830 | 607-654-7487 | HOPP |
| | Catholic Charities of Chemung | 215 East Church St., Suite 101, Elmira, NY 14901 | 607-734-9784 | HOPP |
| Seneca | Community Action in Self Help | 48 Water St., Lyons, NY 14489 | 315-946-6992 | HOPP |
| St. Lawrence | Housing Assistance Program of Essex County (HAPEC) | 103 Hand Ave., Elizabethtown, NY 12932 | 518-873-6888 | HOPP |
| | North Country Housing Council | 19 Main St., Canton, NY 13617 | 315-386-8576 | |
| | Clearpoint Credit Counseling Solutions | 215 Washington St. Suite 005, Watertown, NY 13601 | 1-800-750-2227 | |
| Steuben | Arbor Housing and Development | 26 Bridge St., Corning, NY 14830 | 607-654-7487 | HOPP |
| | Accord | 84 Schuyler St., Belmont, NY 14813 | 585-268-7605 | HOPP |
| | Catholic Charities of Chemung | 215 East Church St., Suite 101, Elmira, NY 14901 | 607-734-9784 | HOPP |
| Suffolk | American Debt Resources, Inc. | 248C Larkfield Road, East Northport, NY 11731 | 1-800-498-0766 | HOPP Spanish speaking staff available |
| | Central Islip Civic Council | 68 Wheeler Rd. Central Islip, NY 11722 | 631-348-0669 | HOPP Spanish speaking staff available |



| | | | |
|---|---|---|---|
| | Community Development Corporation of Long Island | 2100 Middle Country Rd., Suite 300, Centereach NY 11720 | 631-471-1215 ext. 158 | HOPP Spanish speaking staff available |
| | Debt Counseling Corp. | 3033 Express Dr. N, Hauppauge, NY 11749 | 1-888-354-6332 ext. 316 | HOPP Spanish speaking staff available |
| | Economic Opportunity Council of Suffolk, Inc. | 320 Carleton Avenue Suite 7800 Central Islip NY 11722 | 631-647-3762 x 1204 or 1205 | HOPP Spanish speaking staff available |
| | Housing Help, Inc. | 91-101 Broadway Greenlawn, NY 11740 | 631 754 0373 | HOPP Spanish speaking staff available |
| | La Fuerza Unida, Inc. | 1 School St., Suite 302, Glen Cove, NY 11542 | 516-759-0788 | HOPP Spanish speaking staff available |
| | Long Island Housing Partnership, Inc. | 180 Oser Ave., Hauppaugue, NY 11788 | 631-435-4710 | HOPP Spanish speaking staff available |
| | Long Island Housing Services, Inc. | 640 Johnson Ave., Suite 8, Bohemia, NY 11716 | 631-567-5111 x383 | HOPP Spanish speaking staff available |
| | Safeguard Credit Counseling, Inc. | 67 Fort Salonga Road Northport NY 11768 | 1-800-673-6993 | HOPP Spanish speaking staff available |
| | North Fork Housing Alliance | 110 South St., Greenport, NY 11944 | 631-477-1070 | |
| | Bellport, Hagerman, East Patchogue Alliance, Inc. | 1492 Montauk Highway, Bellport, NY 11713 | 631-286-9236 | |
| | Wyandanch Community Development | 59 Cumberbach St. Wyandanch, NY 11798 | 631-253-0139 OR 631-643-4786 | Only serves part of Western Suffolk |
| Sullivan | RUPCO | 301 Fair St. Kingston, NY 12401 | 845-331-9860 | HOPP Spanish speaking staff available |
| | Rural Sullivan Housing Corp. | 6 Pelton St. Monticello, NY 12701 | 845-794-0348 | |
| Tioga | Catholic Charities of Chemung | 215 East Church St., Suite 101, Elmira, NY 14901 | 607-734-9784 | HOPP |
| | Metro Interfaith Housing Management Corp. | 21 New St., Binghamton, NY 13903 | 607-772-6766 | HOPP |
| | Clearpoint Financial Solutions | The Metro Center, 49 Court St., Binghamton, NY 13901 | 877-412-2227 | |
| Tompkins | Catholic Charities of Chemung | 215 East Church St., Suite 101, Elmira, NY 14901 | 607-734-9784 | HOPP |

| | Clearpoint Financial Solutions | The Metro Center, 49 Court St., Binghamton, NY 13901 | 877-412-2227 | |
|---|---|---|---|---|
| **Ulster** | RUPCO | 301 Fair St. Kingston, NY 12401 | 845-331-9860 | HOPP Spanish speaking staff available |
| **Warren** | Housing Assistance Program of Essex County (HAPEC) | 103 Hand Ave., Elizabethtown, NY 12932 | 518-873-6888 | HOPP |
| | Albany County Rural Housing Alliance | 24 Martin Road, Voorheesville, NY 12186 | 518-765-2425 | HOPP |
| | Clearpoint Financial Solutions | 2 Computer Drive West, Albany, NY 12205 | 1-877-412-2227 | Formerly known as Consumer Credit Counseling Service of Central NY |
| | Homefront Development Corp. | 568 Lower Allen St., Hudson Falls, NY 12839 | 518-747-8250 | |
| **Washington** | Housing Assistance Program of Essex County (HAPEC) | 103 Hand Ave., Elizabethtown, NY 12932 | 518-873-6888 | HOPP |
| | Albany County Rural Housing Alliance | 24 Martin Road, Voorheesville, NY 12186 | 518-765-2425 | HOPP |
| | Homefront Development Corp. | 568 Lower Allen St., Hudson Falls, NY 12839 | 518-747-8250 | |
| **Wayne** | Community Action in Self Help | 48 Water St., Lyons, NY 14489 | 315-946-6992 | HOPP |
| | Consumer Credit Counseling Service of Rochester, Inc. | 50 Chestnut Plaza, Rochester, NY 14604 | 1-888-724-2227 | HOPP |
| **Westchester** | Community Housing Innovations, Inc. | 75 South Broadway, Ste 340 White Plains, NY 10601 | 914-683-1010 | HOPP |
| | Housing Action Council | 55 South Broadway, Tarrytown, NY 10591 | 914-332-4144 | HOPP |
| | Human Development Services of Westchester, Inc. | 28 Adee St. Port Chester, NY 10573 | 914-939-2005 | HOPP Spanish speaking counselors available |
| | Westchester Residential Opportunities | 470 Mamaroneck Ave., Suite 410 White Plains, NY 10605 | 914-428-4507 OR 877- WRO-4YOU | HOPP Spanish and French speaking staff available |
| | Putnam County Housing Corp. | 11 Seminary Hill Rd., Carmel, NY 10512 | 845-225-8493 | HOPP Serving Northern section of county |
| | Greenpath | One Barker Ave., Suite 420 White Plains, NY 10601 | 888-366-9140 | |
| **Wyoming** | Belmont Housing Resources | 1195 Main St. Buffalo, NY 14209 | 716-884-7791 | HOPP |



| | Consumer Credit Counseling Services of Rochester, Inc. | 50 Chestnut Plaza, Rochester, NY 14604 | 1-888-724-2227 | HOPP |
|---|---|---|---|---|
| | ACCORD | 84 Schuyler St., Belmont, NY 14813 | 585-268-7605 | HOPP |
| | Consumer Credit Counseling Services of Buffalo, Inc. | 40 Gardenville Parkway, Suite 300, West Seneca, NY 14224 | 1-800-926-9685 or 716-712-2060 | HOPP |
| Yates | Keuka Housing Council | 160 Main St. Penn Yan, NY 14527 | 315-536-8707 | HOPP |

Updated 12/12/2016

# EXHIBIT 2

## *NY CLS RPAPL § 1321*

Current through 2019 released Chapters 1-28

*New York Consolidated Laws Service > Real Property Actions And Proceedings Law (Arts. 1 — 21) > Article 13 Action to Foreclose a Mortgage (§§ 1301 — 1391)*

# § 1321. Default or admission

**1.** If the defendant fails to answer within the time allowed or the right of the plaintiff is admitted by the answer, upon motion of the plaintiff, the court shall ascertain and determine the amount due, or direct a referee to compute the amount due to the plaintiff and to such of the defendants as are prior incumbrancers of the mortgaged premises, and to examine and report whether the mortgaged premises can be sold in parcels and, if the whole amount secured by the mortgage has not become due, to report the amount thereafter to become due. Where the defendant is an infant, and has put in a general answer by his guardian, or if any of the defendants be absentees, the order of reference also shall direct the referee to take proof of the facts and circumstances stated in the complaint and to examine the plaintiff or his agent, on oath, as to any payments which have been made.

**2.** When he moves for judgment, the plaintiff shall show whether any of the defendants who have not appeared are absentees.

# **EXHIBIT 3**



October 6, 2017

 YOSEF GOLD
1251 42ND ST 5 5
BROOKLYN, NY 11219

**PLEASE READ THIS NOTICE CAREFULLY.  TAKE ACTION TO AVOID THE LOSS OF YOUR PROPERTY.**

**NOTICE OF DEFAULT - RIGHT TO CURE**

Account Number: 0016092942
Property Address: 1251 42ND ST 5 5
BROOKLYN, NY 11219

Dear Customer(s):

The mortgage loan on your property is in default as a result of your failure to make payments as required by the Note and Deed of Trust or Mortgage (Security Instrument). We have previously sent you letters and communications regarding this default in an attempt to resolve this matter. This letter provides information about the default and what rights you have to cure the default. Select Portfolio Servicing, Inc. (SPS) services your mortgage loan and has been instructed on behalf of the holder of the promissory note to pursue remedies under the Security Instrument unless you take action to cure the default before the Cure Date shown below. The Noteholder on your Loan is The Bank of New York Mellon Trust Company, NA, successor to The Bank of New York Trust Company, NA, as trustee, for Chase Mortgage Finance Trust Multi-Class Mortgage Pass-Through Certificates, Series 2007-S2 (c/o SPS, PO Box 65250 Salt Lake City, UT 84165-0250).

This letter provides notice of the following:

**The Default**
You have failed to make payments under the Note and Security Instrument as shown below. This letter is a formal demand for payment.

**Action Required to Cure the Default**
To cure this default, you must pay the Amount Required to Cure together with payments which may subsequently become due, on or before the Cure Date listed below.

**Amount Required to Cure the Default**
As of the date of this letter, the total amount due and required to cure the default on your loan is $307,409.68 (Amount Required to Cure) as itemized below:



| Itemization of Amount Required to Cure<br>Cure Date: November 5, 2017 | | |
|---|---|---|
| Payment due for July 1, 2012 | $ | 305,607.68 |
| *Total amount due includes Escrow Payments (Taxes/Insurance) of $476.64* | | |
| Accrued Late Charges | $0.00 | |
| Advances made on Customer's behalf | $1,802.00 | |
| Escrow advance balance (Deficit) | $0.00 | |
| **Total Amount Outstanding** | $ | 307,409.68 |
| Unapplied balance | $ | 0.00 |
| **AMOUNT REQUIRED AS OF October 6, 2017 TO CURE THE DEFAULT** | $ | 307,409.68 |

Additional payments may become due between the date of this letter and the Cure Date. If you wish to cure the default after those payments become due, they should be added to the Amount Required to Cure. You have thirty (30) days from the date of this notice to pay the Amount Required to Cure. This Cure Date is November 5, 2017. Fees and other charges may continue to be assessed to your account after the date of this letter pursuant to the terms of the Security Instrument. In addition, there may be other fees, escrow advances or corporate advances that SPS paid on your behalf or advanced to your account not itemized in this letter. While these amounts are not required to cure the payment default, you still owe these amounts. To obtain the amount required to bring the loan current, please contact SPS at our toll free number 800-635-9698.

SPS is not waiving its right to demand that you pay these amounts at a later date. SPS reserves the right to accept one or more payments for less than the Amount Required to Cure, and such acceptance shall not be deemed a waiver of any of its rights under the Security Instrument. This means, for example, if you send us a payment for less than the Amount Required to Cure, we can apply this payment to the amount due and owing, and because the payment did not cure the default, continue the process towards foreclosure. Please be advised that our acceptance of any such partial payment does not prejudice our right to refuse such payment or partial payment in the future.

**Possible Consequences of Default**
If SPS does not receive the Amount Required to Cure by the Cure Date, or if some loss mitigation alternative to foreclosure has not started, SPS may initiate foreclosure and require immediate payment in full of the entire outstanding unpaid amount on the account. In other words, SPS may accelerate all payments owing and sums secured by the Security Instrument. If that happens, you may lose your home. A foreclosure will result in the involuntary loss of the property via sale to the lender or another person may acquire the property by means of foreclosure and sale, and you may be evicted. Once foreclosure is initiated, additional amounts for legal fees and costs may be incurred.  These sums can be significant. They may be added to amounts secured by the Security Instrument, and they may be required to be paid, to the extent permitted by law, if you wish to reinstate or satisfy the loan after foreclosure is initiated.

You have the right to cure after acceleration of your loan and commencement of foreclosure proceedings. If you meet the conditions to reinstate, as provided in the Security Instrument, you may reinstate even after foreclosure has been initiated but prior to sale. This means that once you have met the conditions, the enforcement of the Security Instrument will be stopped and your Note and Security Instrument will remain, as if demand for payment in full had not been made. You will have this right at any time before the earliest of: (a) five days before sale of the property under any power of sale granted by the Security Instrument; (b) another period as applicable law might specify for the termination of your right to have enforcement of the loan stopped; or (c) a judgment has been entered enforcing your Security Instrument. SPS requires that you pay reinstatement amounts in certified funds. Certified funds include a bank wire, cashier's bank check, attorney trust account check, title or escrow company check, or Western Union Quick Collect. Please contact SPS at 800-635-9698 for instructions on submitting these funds. If you reinstate, the Security Instrument shall remain fully effective as if no foreclosure action had started.

**Payment Options**
Please provide payments to the following address:

Sent via US Mail to:
**Select Portfolio Servicing, Inc.**
**PO Box 65450 Salt Lake City, UT 84165-0450**

Sent via overnight courier to:
**Select Portfolio Servicing, Inc.**
**Attn: Remittance Processing**
**3217 S. Decker Lake Dr Salt Lake City, UT 84119**

Payments may be submitted in the following forms:
     (a) Personal check
     (b) Money order
     (c) Bank wire (electronic funds transfer). Please contact SPS for the information necessary to complete a bank wire.
     (d) Certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency.
     (e) Western Union Quick Collect. Reference the loan number above and deliver to Code City: Oswald, Code State: UT.

In some circumstances, you may be able to submit a payment through EZ Pay by calling 800-258-8602 or visiting our website at **www.spservicing.com**. Please remember that EZ Pay payments clear quickly, and you must have the funds in your checking account on the day you ask us to process a payment. We will obtain your consent prior to initiating payment and will advise you of any fee for this service which may be up to $15.00.

**You Have Options to Avoid Foreclosure!**
SPS is committed to home retention and offers many customer assistance programs designed to help customers avoid foreclosure. These programs are offered at no cost to our customers and are designed to help preserve home ownership or prevent foreclosure through structured repayment plans, special payment arrangements, modifications, short settlements, and deed-in-lieu options, if you are eligible. If you would like to learn more about these programs, you should immediately contact an SPS representative at our toll-free number, 800-635-9698, or visit our website at www.spservicing.com. Our representatives are available by phone Monday through Thursday between the hours of 8 a.m. and 11 p.m., Friday from 8 a.m. to 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time.

**If we can reach an agreement to resolve your default, we will not proceed with and/or commence foreclosure, as long as you comply with the agreement and make required payments.**

**Counseling**
HUD approved home ownership counseling may be available to you. You should call 800-569-4287 or TDD 800-877-8339, or go to HUD's website at www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm to find the HUD-approved housing counseling agency nearest you. You may be eligible for assistance from the Homeownership Preservation Foundation, which may be reached at the Homeowner's HOPE™ Hotline at 888-995-HOPE™ (888-995-4673) or at their website, www.995hope.org, or you may seek help from another non-profit foreclosure avoidance agency.

**Servicemembers Civil Relief Act (SCRA)**
SPS is committed to home ownership assistance for active servicemembers and veterans of the United States military. You may be entitled to certain protections under the federal Servicemembers Civil Relief Act (50 U.S.C. 3901 et seq.) regarding your interest rate and the risk of foreclosure if you are a servicemember or a dependent of a servicemember. Counseling for covered servicemembers is available at agencies such as Military OneSource (800-342-9647 or www.militaryonesource.mil) and Armed Forces Legal Assistance (http://legalassistance.law.af.mil). Note: your state may have more expansive eligibility criteria than below.  Please contact us as soon as possible if you have any questions or believe you may be eligible.



Eligible service may include, but is not limited to:

- Regular members of the U.S. Armed Forces (Army, Navy, Air Force Marine Corps and Coast Guard), or
- Reserve and National Guard personnel who have been activated and are on Federal active duty, or
- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds, or
- Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration, or
- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

Please send written notice of military service as soon as possible to:

Select Portfolio Servicing, Inc.
PO Box 65250 Salt Lake City, UT 84165-0250

If you have questions regarding eligibility and application requirements, please call us at 800-258-8602.

**Your Rights**
If you wish to dispute your delinquency or amount required to Cure the Default, you may do so by providing a written dispute to SPS at the following address:

Select Portfolio Servicing, Inc.
PO Box 65277 Salt Lake City, UT 84165-0277

You may call SPS at our toll free number 800-258-8602 to discuss your dispute. However, to protect your rights under federal law, you will need to provide written notice to SPS if you believe that your dispute is unresolved.

You have the right in any lawsuit for foreclosure and sale to argue that you did keep your promises and agreements under the Note and Security Instrument, and to present any other defenses that you may have.

**You have options to avoid foreclosure. THE TIME TO ACT IS NOW. Please call us at 800-635-9698.**

Sincerely,

Select Portfolio Servicing, Inc.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llamenos al numero 800-831-0118 y seleccione/marque la opción 2.**

**This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.**

**Minnesota - This collection agency is licensed by the Minnesota Department of Commerce
New York City - Collection Agency License # 1170514**

# **<u>EXHIBIT 4</u>**

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2006092900880005001E6565

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 31 |
|---|---|

**Document ID:** 2006092900880005      Document Date: 09-15-2006      Preparation Date: 09-29-2006
**Document Type:** AGREEMENT
**Document Page Count:** 30

| PRESENTER: | RETURN TO: |
|---|---|
| JUDICIAL TITLE INSURANCE AGENCY, LLC | JPMORGAN CHASE BANK, N.A. |
| PICKUP 86142 | NATIONAL HOME EQUITY POST CLOSING |
| 800 WESTCHESTER AVENUE, SUITE S-340 | KY2-1606 |
| FIRST AMERICAN | P.O. BOX 11606 |
| RYE BROOK, NY 10573 | LEXINGTON, KY 40576 |
| 914-381-6700 | |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 5593 | 1305   Entire Lot | 5 | 1251 42 STREET |

**Property Type:** SINGLE RESIDENTIAL CONDO UNIT

**CROSS REFERENCE DATA**

CRFN_____ *or* Document ID_____ *or* _____ Year____ Reel___ Page___ *or* File Number_____

**PARTIES**

| PARTY 1: | PARTY 2: |
|---|---|
| YOSEF GOLD | JPMORGAN CHASE BANK, N.A. |
| 1251 42ND ST. | 900 STEWART AVENUE, 4TH FLOOR |
| BROOKLYN, NY 11219 | GARDEN CITY, NY 11530 |

**FEES AND TAXES**

| Mortgage | | | Recording Fee: $ | 187.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 600,000.00 | Affidavit Fee: $ | 8.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | 255 | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed      10-05-2006 16:48
City Register File No.(CRFN):
              2006000561906

*City Register Official Signature*

*[handwritten:]* Ret.
JP Morgan Chase Bank, N.A.
National Home Equity Post Closing KY2-1606
P.O. Box 11606
Lexington, KY 40576

**THE JUDICIAL TITLE INSURANCE AGENCY LLC**
800 WESTCHESTER AVENUE | SUITE S-340
RYE BROOK, NY 10573
914-381-6700

_____[Space Above This Line For Recording Data]_____

### CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT

**WORDS USED OFTEN IN THIS DOCUMENT**
**(A)"Agreement."** This document, which is dated ____**SEPTEMBER 15, 2006**____ and exhibits and riders attached to this document will be called the "Agreement."
**(B) "Borrower."** ____**YOUSEF GOLD**____ will be called "Borrower" and sometimes "I" or "me." Borrower's address is____ **1251 42ᵀᴴ STREET, BROOKLYN, NEW YORK 11219**____
**(C) "Lender."** __**JP MORGAN CHASE BANK, N.A.**__ will be called "Lender" and sometimes "Note Holder."
Lender is a corporation or association which exists under the laws of the State of _New York_ Lender's
address is **900 STEWART AVENUE, 4ᵀᴴ FLOOR, GARDEN CITY, NEW YORK 11530** .
**(D) "Mortgages."** The mortgages, deeds of trust, or other security instruments and any additional security instruments and related agreements (such as assignments, extensions, modifications, or consolidations of mortgages) identified in Exhibit A to this Agreement will be called the "Mortgages."
**(E) "Note Holder."** Lender or anyone who succeeds to Lender's rights under this Agreement and who is entitled to receive the payments I agree to make under this Agreement may be called the "Note Holder."
**(F) "Notes."** The Notes which are identified in Exhibit A to this Agreement, and which are secured by the Mortgages, will be called the "Notes."
**(G) "Property."** The property which is described in the Mortgage(s) and in Exhibit B (Property Description) to this Agreement, will be called the "Property." The Property is located at:
_____**1251 42ᵀᴴ STREET, BROOKLYN, NEW YORK 11219**_____
[Street]
_____**Brooklyn**_____, _____**KINGS**_____, _____**NEW YORK  11219**_____
City]                              [County]                         [State and Zip Code]

I promise and I agree with Lender as follows:
**I. BORROWER'S AGREEMENT ABOUT OBLIGATION UNDER THE NOTES AND MORTGAGES**
I agree to take over all of the obligations under the Notes and Mortgages as consolidated and modified by this Agreement as Borrower. This means that I will keep all of the promises and agreements made in the Notes and Mortgages even if some other person made those promises and agreements before me. The total unpaid principal balance of the Notes is U.S. $ _261,557.86_ of this amount, U.S. $338,442.14_ was advanced to me (or for my account) immediately prior to this consolidation.

**II. AGREEMENT TO COMBINE NOTES AND MORTGAGES**
**(A)** By signing this Agreement, Lender and I are combining into one set of rights and obligations all of the promises and agreements stated in the Notes and Mortgages including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages. This means that all of Lender's rights in the Property are combined so that under the law Lender has one mortgage and I have one loan obligation which I will pay as provided in this Agreement. This combining of notes and mortgages is known as a "Consolidation."

*[handwritten:]*
Section • 
Block • 5593
Lot • 1305
Title #• 86142
County • Brooklyn
Town/City • New York

*NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT- Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3172 1/01 (rev. 5/01)*
*(Page 1 of 8 pages)*

(B) In the event that Exhibit A indicates that all of the Notes and Mortgages have already been combined by a previous agreement, then Lender and I agree to change the terms of Section II, paragraph (A) of this Agreement to the following: Lender and I agree that all of the promises and agreements stated in the Notes and Mortgages

-- including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages -- have been combined into one set of rights and obligations by an earlier agreement which is referred to in Exhibit A. This means that all of the Lender's rights in the Property have already been combined so that under the law Lender already has one mortgage and I have one loan obligation which I will pay as provided in this Agreement. The combining of notes and mortgages is known as a "Consolidation."

### III. AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED NOTE
Lender and I agree that the terms of the Notes are changed and restated to be the terms of the "Consolidated Note" which is attached to this Agreement as Exhibit C. The Consolidated Note contains the terms of payment for the amounts that I owe to Note Holder. I agree to pay the amounts due under the Notes in accordance with the terms of the Consolidated Note. The Consolidated Note will supersede all terms, covenants, and provisions of the Notes.

### IV. AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED MORTGAGE
Lender and I agree that the terms of the Mortgages are changed and restated to be the terms of the "Consolidated Mortgage" which is attached to this Agreement as Exhibit D. The Consolidated Mortgage secures the Consolidated Note and will constitute in law a single lien upon the Property. I agree to be bound by the terms set forth in the Consolidated Mortgage which will supersede all terms, covenants, and provisions of the Mortgages.

### V. NO SET-OFF, DEFENSES
I agree that I have no right of set-off or counterclaim, or any defense to the obligations of the Consolidated Note or the Consolidated Mortgage.

### VI. BORROWER'S INTEREST IN THE PROPERTY
I promise that I am the lawful owner occupying the Property and that I have the right to consolidate, modify, and extend the Notes and Mortgages.

### VII. WRITTEN TERMINATION OR CHANGE OF THIS AGREEMENT
This Agreement may not be terminated, changed, or amended except by a written agreement signed by the party whose rights or obligations are being changed by that agreement.

### VIII. OBLIGATIONS OF BORROWERS AND OF PERSONS TAKING OVER BORROWER'S OR LENDER'S RIGHTS OR OBLIGATIONS
If more than one person signs this Agreement as Borrower, each of us is fully and personally obligated to keep all of Borrower's promises and obligations contained in this Agreement. The Note Holder may enforce its rights under this Agreement against each of us individually or against all of us together.

The terms of the Consolidated Note and the Consolidated Mortgage may not allow any person to take over my rights or obligations under this Agreement. Lender and I agree that if any person is permitted to take over my rights and obligations under this Agreement, that person will have all of my rights and will be obligated to keep all of my promises and agreements made in this Agreement. Similarly, any person who takes over Lender's rights or obligations under this Agreement will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Agreement.

### IX. LIEN LAW
I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Consolidated Note as a "trust fund;" and (B) use those amounts to pay for "cost of improvement" (as defined in the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section IX.

### X. TYPE OF PROPERTY
Check box(es) as applicable.
This Agreement covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six (6) residential dwelling units with each dwelling unit having its own separate cooking facilities.
This Agreement covers real property improved, or to be improved, by a one (1) or two (2) family dwelling.
This Agreement does not cover real property improved as described above.

By signing this Agreement, Lender and I agree to all of the above.

**Attorney**

in fact for *Yosef Gold*

RECORDED
SIMULTANEOUSLY
HERE WITH

JP MORGAN CHASE BANK
William A. Hirshfeld, Esq.    - Lender

By: _____

William A. Hischfield, Esq. - member

YOUSEF GOLD        - borrower
By Shaya Monheit, As Attorney-in-Fact

-borrower

[Space Below This Line For Acknowledgment]

State of New York            )
                             ) ss:
County of  Kings             )

On the 15th day of September in the year 2006 before me, the undersigned, a Notary Public in and for said State, personally appeared YOUSEF GOLD, *By Shaya Monheit, As Attorney-in-Fact* personally known to me or proved to me on the basis of satisfactory evidence to be the individual (s) whose name (s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity (ies), and that by his/her/their signature (s) acted, executed the instrument.

Notary Public

My Commission expires:_____

State of New York            )
                             ) ss:
County of  Rockland          )

MORDCHE FUCHS
Notary Public, State of New York
No. 01FU6C90431
Qualified in Kings County
Commission Expires April 14, 2007

On the 20th day of September in the year 2006 before me, the undersigned, a Notary Public in and for said State, personally appeared WILLIAM A. HIRSHFELD , personally known to me or proved to me on the basis of satisfactory evidence to be the individual (s) whose name (s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity (ies), and that by his/her/their signature (s) acted, executed the instrument.

Notary Public

My Commission expires: 11-19-06

FELICIA S. HIRSHFELD
Notary Public, State of New York
No. 02HI4674544
Qualified in Rockland County
Commission Expires Nov. 19, 20 06

*NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT- Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3172 1/01 (rev. 5/01) (Page 3 of 8 pages)*

## INSTRUCTIONS

The following instructions apply if this Agreement is used in a consolidation, extension, or modification of a single family loan intended for possible sale to Fannie Mae or Freddie Mac.

(1)   All notes, security instruments, assignments, the most recent consolidation agreement and related agreements that modify, consolidate, or extend prior underlying obligations and which predate this Agreement must be listed in Exhibit A to this Agreement.  The language in Exhibit A to this Agreement is only a sample and may be revised as appropriate.

   If any new money is advanced, number (1) on Exhibit A should refer to both (a) the "Gap" Mortgage (i.e., the new money mortgage discussed in (6) below), and (b) the "Gap" Note (i.e., new money note discussed in (6) below).

(2)   The metes and bounds description of the Property must be set forth in Exhibit B to this Agreement.

(3)   The Consolidated Note must be the current version of the applicable Single Family Fannie Mae/Freddie Mac Uniform Note (e.g., Forms 3233, 3501, 3502, 3504, or 3514) with the following language inserted at the top of the document:

For Fixed Rate Notes:

### CONSOLIDATED NOTE

**This Note amends and restates in their entirety, and is given in substitution for,
the Notes described in Exhibit A of the New York Consolidation, Extension,
and Modification Agreement dated the same date as this Note.**

For Adjustable Rate Notes:

### CONSOLIDATED ADJUSTABLE RATE NOTE

**This Note amends and restates in their entirety, and is given in substitution for,
the Notes described in Exhibit A of the New York Consolidation, Extension,
and Modification Agreement dated the same date as this Note.**

   The Consolidated Note, with all blanks completed, and any applicable addendum or addenda, must be executed by the Borrower(s) and a copy of the executed Consolidated Note must be attached hereto as Exhibit C.  The repayment terms of the Consolidated Note (e.g., the consolidated principal amount, the monthly principal and interest payment, the interest rate and provisions for any interest rate and monthly payment changes applicable to the consolidated obligations) must be set forth in the Consolidated Note.  The dollar amount entered in the first blank in Section I of this Agreement and the consolidated principal amount of the Consolidated Note must be the same.

(4)   The Consolidated Mortgage must be the current version of the New York Single Family Fannie Mae/Freddie Mac Uniform Instrument (Form 3033).  The Consolidated Mortgage, with all blanks completed, and any applicable riders (such as an adjustable rate rider), must be attached hereto as Exhibit D.  The Consolidated Mortgage must be signed by the Borrower(s).  The dollar amount entered in the first blank in Section I of this Agreement and the dollar amount entered in the corresponding blank in the Consolidated Mortgage must be the same.

(5)   For sales of loans to Fannie Mae and Freddie Mac, the Seller/Lender must deliver the executed and recorded original of this Agreement and all exhibits to it (or a certified true copy from the recording clerk, if the original is not yet available), together with the original Consolidated Note signed by the Borrower(s) and each original Note which is the original evidence of any part of Borrower's indebtedness set out in this Agreement.

(6)   If new funds are advanced at the time of the consolidation and modification evidenced by this Agreement, the new obligation must be evidenced by an original of the new money note (the "Gap" Note) and an original of the new money mortgage (the "Gap" Mortgage) on the current Fannie Mae/Freddie Mac Single Family Uniform Instrument (Form 3033).  The dollar amount entered in the second blank in Section I of this Agreement and the dollar amount entered in the corresponding blank on the Gap Note and Gap Mortgage must be the same.  If no new funds are advanced at the time of the consolidation and modification, then the second blank in Section I of this Agreement should be zero.  This new loan will then become a part of the Consolidated Note and the Consolidated Mortgage.  It is not necessary that the repayment terms of the new loan, as set out in the Gap Note, reflect the terms of the Consolidated Note.

**EXHIBIT A**
(List of Mortgages, Notes, and Agreements)

(1) This Mortgage given by **YOUSEF GOLD** and dated **SEPTEMBER 15, 2006** in favor of **JP MORGAN CHASE BANK, N.A.**, securing the original principal amount of U.S. **$338,442.14.** This mortgage will be recorded together with this Agreement in the Clerk's Office of Kings County, State of New York. At this date, the unpaid principal balance secured by this mortgage is U.S. **$338,442.14.** This mortgage secures a Note dated **SEPTEMBER 15, 2006.**

(2) This Mortgage given by **YOUSEF GOLD** and dated **JULY 28, 2003** in favor of **GREENPOINT MORTGAGE FUNDING, INC.** securing the original principal amount of U.S. **$270,000.00.**. This mortgage was recorded on **FEBRUARY 12, 2004** in the County Clerks Office of Kings County, State of New York, in **CRFN # 2004000083967.** This mortgage secures a Note dated **JULY 28, 2003.**

This Mortgage was assigned by **GREENPOINT MORTGAGE FINDING, INC.** to **DLJ MORTGAGE CAPITAL, INC.** by Assignment dated **SEPTEMBER 1, 2006** , which Assignment will be recorded simultaneously herewith

This Mortgage is being assigned by **WELLS FARGO BANK, N.A., Successors by merger to WELLS FARGO HOME MORTGAGE, INC., as Attorney-In-Fact for DLJ CAPITAL, INC.** to **JP MORGAN CHASE BANK** by Assignment dated **SEPTEMBER 1, 2006** , which Assignment will be recorded simultaneously herewith.

That a Consolidation, Extension and Modification Agreement was made between **YOUSEF GOLD** and **JP MORGAN CHASE BANK** dated **SEPTEMBER 15, 2006**, which will be recorded simultaneously with the Mortgage dated **SEPTEMBER 15, 2006.**

This Mortgage secures a Note dated **SEPTEMBER 15, 2006.** At this date, the unpaid principal balance secured by this Mortgage is U.S.
**$261,557.86.**

*Said Mortgages will be combined extending the indebtedness to $600,000.00.

EXHIBIT "B"

SCHEDULE A

THE Condominium Unit known as Unit No. 5 (hereinafter called "the Unit") in the Building known as 1251 42nd Street, Brooklyn, New York and also designated and described as Unit No. 5 in the Declaration comprising The 1251 42nd Street Condominium (hereinafter called the "Property") made by the Grantor under the Condominium Act of the State of New York, as amended (Article 9-B of the Real Property Law of the State of New York), recorded in the Kings County Office of the Register of the City of New York on the 18th day of July, 2001 in Reel 5223 page 1010, (hereinafter called the "Declaration") which Unit is also designated as Tax Lot No. 1305 on the Floor Plan of the Buildings and filed simultaneously with said Declaration (hereinafter called the "Unit"), as Map No. 0.105551;

THE land area of the Property is described as follows:

ALL that certain plot, piece, parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York and bounded and described as follows:

BEGINNING at a point on the northerly side of 42nd Street, distant 260 feet westerly from the corner formed by the intersection of the said westerly side of 13th Avenue with the northerly side of 42nd Street;

RUNNING THENCE northerly at right angles to 42nd Street, 100 feet 2-1/8 inches;

THENCE westerly at right angles to the previous course, 27 feet 6 inches;

THENCE southerly and parallel to the westerly side of 13th Avenue, 100 feet 2-1/8 inches; and

THENCE easterly to the previous course, along the northerly side of 42nd Street, 27 feet 6 inches to the point or place of BEGINNING.

TOGETHER with any strips or gores adjoining the above described premises on any of the sides thereof;

TOGETHER with an undivided 19.05 percent interest in the Common Elements of the Property described in said Declaration (hereinafter called the "Common Elements").

FOR
CONVEYANCING
ONLY

The policy to be issued under this report will insure the title to such buildings and improvements erected on the premises which by law constitute real property.

TOGETHER with all the right, title and interest of the party of the first part, of, in and to the land lying in the street in front of and adjoining said premises.

EXHIBIT "C"

## CONSOLIDATED NOTE

This Note amends and restates in their entirety, and is given in
substitution for the Notes described in Exhibit A of the New York
Consolidation, Extension and Modification Agreement dated the same as this Note

| September 15, 2006 | New City | NY |
| [Date] | [City] | [State] |

1251 42nd St #5
Brooklyn, NY  11219

[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 600,000.00          (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is
JPMorgan Chase Bank, N.A.
a bank which is organized and existing under the laws of the United States of America
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of 7.750        %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

### 3. PAYMENTS

(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.

I will make my monthly payment on the First          day of each month beginning on November 1st 2006          . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on October 1, 2036          , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date."

I will make my monthly payments at JPMorgan Chase Bank, N.A., c/o Chase Home Finance, LLC
3415 Vision Drive, Columbus, OH 43219          or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $ 4,298.48          .

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my
monthly payment unless the Note Holder agrees in writing to those changes.

1760541580

NEW YORK FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-5N(NY) (0005)          Form 3233 1/01
VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 3          Initials: _____

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen       calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2.000       % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

-5N(NY) (0005)                              Page 2 of 3                              Form 3233 1/01
                                                                                     Initials: _____

**10. UNIFORM SECURED NOTE**

    This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

    Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

    If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Attorney_

_in fact for_ Yosef Gold

_____ (Seal)     _____ (Seal)
                          -Borrower     Yosef Gold By Shaya Monheit       -Borrower
                                        As Attorney-in-Fact

                                            RECORDED
                                        SIMULTANEOUSLY
                                           HERE WITH

_____ (Seal)     _____ (Seal)
                          -Borrower                               -Borrower

_____ (Seal)     _____ (Seal)
                          -Borrower                               -Borrower

_____ (Seal)     _____ (Seal)
                          -Borrower                               -Borrower

                                                      *[Sign Original Only]*

1760541580

Return To:
JPMorgan Chase Custody Services
P.O. Box 8000
Monroe, LA 71211

Prepared By:

_____ [Space Above This Line For Recording Data] _____

## EXHIBIT "D"

# CONSOLIDATED MORTGAGE

**WORDS USED OFTEN IN THIS DOCUMENT**
(A) "Security Instrument." This document, which is dated September 15, 2006
together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower."
Yosef Gold

whose address is
1251 42nd St, Brooklyn, NY 11219
sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "Lender."
JPMorgan Chase Bank, N.A.
will be called "Lender." Lender is a corporation or association which exists under the laws of
the United States of America                    . Lender's address is
1111 Polaris Parkway, Columbus, OH 43240

1760541580
NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3033 1/01

-6(NY) (0008).08
Page 1 of 17          Initials: _____
    VMP Mortgage Solutions, Inc. (800)521-7291

(D) "Note." The note signed by Borrower and dated September 15, 2006               , will be called the "Note." The Note shows that I owe Lender Six hundred thousand and 00/100

                    Dollars (U.S. $  600,000.00               ) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by October 1, 2036

(E) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."

(F) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(H) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☒ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(J) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(K) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(M) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(N) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(P) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

1760541580

-6(NY) (0005).08                          Page 2 of 17                    Initials: _____              Form 3033 1/01

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

**DESCRIPTION OF THE PROPERTY**

I give Lender rights in the Property described in (A) through (G) below:

(A) The Property which is located at

1251 42nd St #5                                                              [Street]
Brooklyn                        [City, Town or Village], New York   11219   [Zip Code].
This Property is in KINGS                                    County. It has the following legal
description:
See attached Schedule A

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

1760541580

-6(NY) (0008) 05                        Page 3 of 17          Initials: _____          Form 3033 1/01

## SCHEDULE A

THE Condominium Unit known as Unit No. 5 (hereinafter called "the Unit") in the Building known as 1251 42nd Street, Brooklyn, New York and also designated and described as Unit No. 5 in the Declaration comprising The 1251 42nd Street Condominium (hereinafter called the "Property") made by the Grantor under the Condominium Act of the State of New York, as amended (Article 9-B of the Real Property Law of the State of New York), recorded in the Kings County Office of the Register of the City of New York on the 18th day of July, 2001 in Reel 5223 page 1010, (hereinafter called the "Declaration") which Unit is also designated as Tax Lot No. 1305 on the Floor Plan of the Buildings and filed simultaneously with said Declaration (hereinafter called the "Unit"), as Map No. 0.105551;

THE land area of the Property is described as follows:

ALL that certain plot, piece, parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York and bounded and described as follows:

BEGINNING at a point on the northerly side of 42nd Street, distant 260 feet westerly from the corner formed by the intersection of the said westerly side of 13th Avenue with the northerly side of 42nd Street;

RUNNING THENCE northerly at right angles to 42nd Street, 100 feet 2-1/8 inches;

THENCE westerly at right angles to the previous course, 27 feet 6 inches;

THENCE southerly and parallel to the westerly side of 13th Avenue, 100 feet 2-1/8 inches; and

THENCE easterly to the previous course, along the northerly side of 42nd Street, 27 feet 6 inches to the point or place of BEGINNING.

TOGETHER with any strips or gores adjoining the above described premises on any of the sides thereof;

TOGETHER with an undivided 19.05 percent interest in the Common Elements of the Property described in said Declaration (hereinafter called the "Common Elements").

FOR
CONVEYANCING
ONLY

The policy to be issued under this report will insure the title to such buildings and improvements erected on the premises which by law constitute real property.

TOGETHER with all the right, title and interest of the party of the first part, of, in and to the land lying in the street in front of and adjoining said premises.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn on an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

1760541580

-6(NY) (0005).01                    Page 4 of 17              Initials: _____              Form 3033 1/01

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

1760541580

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments and Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

1760541580

Initials: _____

Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c)

1760541580

Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a) Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

**(b) Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

1760541580

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance

1760541580

 -6(NY) (0008).06                    Page 8 of 17          Initials: _____          Form 3033 1/01

coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. These mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. **Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in

1760541580

value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to

1760541580

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

1760541580

-6(NY) 10008).05                    Page 12 of 17          Initials: _____          Form 3033 1/01

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued. Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance. The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time

1760541580

period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to

1760541580

VMP -6(NY) (00081.05)    Page 14 of 17    Initials: _____    Form 3033 1/01

the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

☒ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

1760541580

-6(NY) (0005).05                        Page 16 of 17          Initials: _____          Form 3033 1/01

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____        _____ (Seal)
                                        Yosef Gold  By Shaya Monheit-Borrower
                                        As Attorney-in-Fact


_____        _____ (Seal)
                                                                    -Borrower


_____ (Seal)        _____ (Seal)
                -Borrower                                           -Borrower


_____ (Seal)        _____ (Seal)
                -Borrower                                           -Borrower


_____ (Seal)        _____ (Seal)
                -Borrower                                           -Borrower


1760541580

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this    15th    day of    September, 2006    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to
JPMorgan Chase Bank, N.A.

                                                                                (the
"Lender") of the same date and covering the Property described in the Security Instrument
and located at:
1251 42nd St #5
Brooklyn, NY  11219
                                        [Property Address]
The Property includes a unit in, together with an undivided interest in the common elements
of, a condominium project known as:
The 1251 42nd St Condo
                                [Name of Condominium Project]
(the "Condominium Project"). If the owners association or other entity which acts for the
Condominium Project (the "Owners Association") holds title to property for the benefit or use
of its members or shareholders, the Property also includes Borrower's interest in the Owners
Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:
A. Condominium Obligations. Borrower shall perform all of Borrower's obligations under
the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i)
Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii)
code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.
B. Property Insurance. So long as the Owners Association maintains, with a generally
accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which
is satisfactory to Lender and which provides insurance coverage in the amounts (including
deductible levels), for the periods, and against loss by fire, hazards included within the term
"extended coverage," and any other hazards, including, but not limited to, earthquakes and
floods, from which Lender requires insurance, then: (i) Lender waives the provision in

1760541580

MULTISTATE CONDOMINIUM RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT
�-8R (0411)        Form 3140 1/01
Page 1 of 3            Initials: _____
VMP Mortgage Solutions, Inc.
(800)521-7291

Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. **Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E. **Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. **Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

1760541580

-8R (0411)                           Page 2 of 3                    Initials: _____          Form 3140 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_____ (Seal)
                             -Borrower

Yosef Gold By Shaya Monheit
As Attorney-in-Fact
_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

1760541580

-8R (0411)                   Page 3 of 3                  Form 3140 1/01

**STATE OF NEW YORK, KINGS**                                    County ss:

On the 15th            day of September 2006                      before me, the undersigned, a notary
public in and for said state, personally appeared
Yosef Gold  By Shaya Monheit   As Attorney-in-Fact

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the
individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

Tax Map Information:

l760541580

-6(NY) (0006).00                          Page 17 of 17          Initials: _____        Form 3033 1/01

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2006092900880005001SABE4

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

**Document ID:** 2006092900880005   **Document Date:** 09-15-2006   **Preparation Date:** 09-29-2006
**Document Type:** AGREEMENT

---

**SUPPORTING DOCUMENTS SUBMITTED:**

| | Page Count |
|---|---|
| 255 MORTGAGE TAX EXEMPT AFFIDAVIT | 1 |

**AFFIDAVIT UNDER SECTION 255 OF THE TAX LAW**

To be signed by the Mortgagee or Attorney for Mortgagee

STATE OF NEW YORK
COUNTY OF ROCKLAND } SS.:

    The undersigned, being duly sworn, deposes and says that he is the Attorney for the owner and holder of the hereinafter described mortgage, and is familiar with the facts set forth herein.

    That a certain mortgage was made by **YOUSEF GOLD** in favor of **GREENPOINT MORTGAGE** which mortgage was dated **JULY 28, 2003** and recorded in the office of the Kings County Clerk on **FEBRUARY 12, 2004** in **CRFN # 2004000083967** in the principal sum of $270,000.00, a mortgage tax of $5,400.00 was paid at the time of recording.

    This Mortgage was assigned by **GREENPOINT MORTGAGE FINDING, INC.** to **DLJ MORTGAGE CAPITAL, INC.** by Assignment dated **SEPTEMBER 1, 2006**, which Assignment will be recorded simultaneously herewith

    This Mortgage is being assigned by **WELLS FARGO BANK, N.A., Successors by merger to WELLS FARGO HOME MORTGAGE, INC., as Attorney-in-Fact for DLJ CAPITAL, INC.** to **JP MORGAN CHASE BANK** by Assignment dated **SEPTEMBER 1, 2006**, which Assignment will be recorded simultaneously herewith.

    That a certain mortgage was made by **YOUSEF GOLD** to JP **MORGAN CHASE BANK** dated in the principal sum of $338,442.14 which mortgage is intended to be recorded simultaneously herewith.

    That a mortgage Consolidation, Extension and Modification Agreement was entered into by **YOUSEF GOLD** and **JPMORGAN CHASE BANK**, dated **SEPTEMBER 15, 2006**, combining said mortgages and extending the indebtedness to $600,000.00.

    That said Agreement is given solely for the purpose of extending the payment of the original principal indebtedness which is or under any contingency may be secured by the above mentioned mortgage, and that such agreement does not create or secure any new or further indebtedness or obligation other than the principal sum of $338,442.14

    WHEREFORE, deponent respectfully requests that such Extension Agreement be declared exempt from taxation pursuant to the provisions of Section 255, Article II of the Tax Law.

                                 WILLIAM A. HIRSHFELD, ESQ.
                                   Member

Sworn to me on this 20**th**
day of September, 2006

_____
NOTARY PUBLIC

FELICIA S. HIRSHFELD
Notary Public, State of New York
No. 02HI14674544
Qualified in Rockland County
Commission Expires Nov. 19, 2012