UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
YOSEF GOLD,

                          Plaintiff,

                                                         **MEMORANDUM & ORDER**
          - against -                                     18-CV-6787 (PKC) (SJB)

SHAPIRO, DICARO & BARAK, LLC;
SELECT PORTFOLIO SERVICING, INC.;
and THE BANK OF NEW YORK MELLON
TRUST, N.A.,

                          Defendants.
--------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

          Plaintiff Yosef Gold brings this action against Defendants Shapiro, Dicaro & Barak, LLC

("Shapiro"), Select Portfolio Servicing, Inc. ("SPS"), and the Bank of New York Mellon Trust,

N.A. ("BONY") alleging abusive, deceptive and unfair debt collection practices in violation of the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.* and New York General

Business Law § 349 ("GBL § 349").  Pending before the Court are Defendants' motions to dismiss.

(Dkts. 20, 24.)  For the reasons stated below, Defendants' motions to dismiss are granted in part

and denied in part.

## BACKGROUND

**I.     Relevant Facts[1]**

          Between 2003 and 2006, Plaintiff entered into two mortgage agreements with different

non-party mortgage companies.  (Amended Complaint ("Am. Compl."), Dkt. 12, ¶¶ 14, 16.)  The

first of these mortgages was then assigned to other non-party mortgage companies in 2006.  (*Id.* at

---

[1] The Court assumes the truth of the amended complaint's non-conclusory factual
allegations.  *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) (*en banc*).

¶¶ 15, 18.) On September 15, 2006, non-party JPMorgan Chase Bank N.A., which by this point owned both mortgages, consolidated the mortgages into a single agreement ("the Consolidated Mortgage"). (*Id.* ¶¶ 17–18.) On April 10, 2008, this Consolidated Mortgage was assigned to non-party Chase Home Finance LLC ("Chase Home"). (*Id.* ¶ 19.) The next day, on April 11, 2008, Chase Home initiated a foreclosure action against Plaintiff in Kings County Supreme Court.[2] (*Id.* ¶ 20.) Over five years later, on November 21, 2013, the foreclosure action was dismissed for abandonment by the Honorable Lawrence Knipel pursuant to C.P.L.R. § 3215(c). (*Id.* ¶ 22.) On February 4, 2014, Chase Home assigned its interest in the Consolidated Mortgage to Defendant BONY. (*Id.* ¶ 23.)

On October 5, 2017, Plaintiff received a letter from Defendant SPS that stated "YOU MAY BE AT RISK OF FORECLOSURE" and "[a]s of October 5, 2017, your home is 1922 days and $307,409.68 in default. Under New York State Law, we are required to send you this notice to inform you that you are at risk of losing your home." (*Id.* ¶ 24; *see also* Exhibit A, Dkt. 12-1, at ECF[3] 1–17.) The October 5, 2017 letter also states that "[i]f you have not taken any action to resolve this matter within 90 days from the date this notice was mailed, we may commence legal action against you (or sooner if you cease to live in the dwelling as your primary residence.)." (Am. Compl., Dkt. 12, ¶ 25.) Plaintiff asserts that by October 5, 2017, it had been "over three years after the statute of limitations [had] expired" on his mortgage debt. (*Id.* ¶ 24.)

On October 6, 2017, Plaintiff received a second letter from Defendant SPS titled "NOTICE OF DEFAULT – RIGHT TO CURE." (*Id.* ¶ 27; *see also* Exhibit A, Dkt. 12-1, at ECF 18–21.)

---

[2] Plaintiff notes that on December 12, 2008 the property subject to the consolidated mortgage was transferred to the Zahav Family Trust. (Am. Compl., Dkt. 12, ¶ 21.)

[3] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

This letter included, *inter alia*, (1) an "[i]temization of [a]mount [r]equired to [c]ure," (2) a "[c]ure [d]ate" of November 5, 2017, and (3) a statement that $307,409.68 was required to cure the default. (Am. Compl., Dkt. 12, ¶ 28.)  Though the letters were addressed from Defendant SPS, Plaintiff alleges that they were mailed by Defendant Shapiro at SPS's behest.  (*Id.* ¶ 29.)

On March 2, 2018, Defendant BONY commenced a foreclosure action in Kings County Supreme Court against Plaintiff.  (*Id.* ¶ 30.)  BONY was represented by Defendant Shapiro.  (*Id.* ¶ 31–32.)  Plaintiff asserts that BONY and Shapiro commenced this foreclosure action even though they had "full and complete knowledge" that the mortgage was unenforceable because the statute of limitations had expired.  (*Id.* ¶ 33.)  Plaintiff filed an answer in the foreclosure action in March 2018 seeking, *inter alia*, that the mortgage be discharged as time-barred.  (*Id.* ¶ 35.)  On August 21, 2018, the Honorable Noach Dear of Kings County Supreme Court dismissed the 2018 foreclosure action as past the statute of limitations.  (*Id.* ¶ 36.)

## II.    Procedural History

Plaintiff filed the instant action on November 29, 2018.  (Dkt. 1.)  After Defendant SPS filed a pre-motion conference request seeking to file a motion to dismiss (Dkt. 8), Plaintiff filed an amended complaint on January 17, 2019 (Dkt. 12).  In response, all three Defendants filed pre-motion conference requests seeking to file motions to dismiss the amended complaint.  (Dkts. 20, 24.)  The Court construed these requests as Defendants' respective motions to dismiss and ordered supplemental briefing.  (*See* Feb. 5, 2019 Docket Order.)  The Court then held oral argument on Defendants' motions on March 21, 2019.  (*See* Mar. 21, 2019 Minute Entry.)  At oral argument, the Court reserved decision on Defendants' motions and ordered supplemental briefing on (1) the impact of the Supreme Court's recent decision in *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029 (2019), (2) the applicability of GBL § 349 to the October 2017 letters sent by Defendants

SPS and Shapiro, and (3) whether the Second Circuit's decision in *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128 (2d Cir. 2017) forecloses Defendants' argument regarding *Midland Funding, LLC v. Johnson* ("*Midland*"), 137 S. Ct. 1407 (2017). (*Id.*; Mar, 22, 2019 Docket Order.) Supplemental briefing was completed on May 14, 2019. (Dkts. 31, 32, 33.)

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual allegations, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

In addressing the sufficiency of a complaint, courts must "accept as true the factual allegations of the complaint, and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Arar*, 585 F.3d at 567. Nevertheless, a court "need not credit conclusory statements unsupported by assertions of facts or legal conclusions . . . presented as factual allegations." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). At the pleadings stage, the Court must limit its inquiry to the facts alleged in the complaint, the documents attached to the complaint or incorporated therein by reference, and "documents that, while not explicitly

4

incorporated into the complaint, are 'integral' to plaintiff's claims and were relied upon in drafting the complaint." *Id*. (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991)).

## DISCUSSION

### I.     Plaintiff's FDCPA Claim

The FDCPA is "remedial in nature, [so] its terms must be construed in [a] liberal fashion if the underlying Congressional purpose is to be effectuated." *Vincent v. The Money Store*, 736 F.3d 88, 98 (2d Cir. 2013) (quoting *N.C. Freed Co. v. Bd. of Governors of Fed. Reserve Sys.*, 473 F.2d 1210, 1214 (2d Cir. 1973)).  To prevail on an FDCPA claim, three requirements must be met: "(1) the plaintiff must be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, . . . (2) the defendant collecting the debt [must be] considered a 'debt collector,' and (3) the defendant [must] ha[ve] engaged in [an] act or omission in violation of FDCPA requirements." *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 522, 529 (S.D.N.Y. 2013) (internal citation omitted).

Defendants argue that Plaintiff's FDCPA claims fail because (1) Plaintiff's claims based on the October 2017 letters are untimely; (2) Defendant BONY is not a debt collector as defined by the FDCPA; (3) the FDCPA does not apply to foreclosure actions; and (4) Defendants' decision to initiate a foreclosure action on a time-barred mortgage is not a violation of FDCPA § 1692(e). The Court address each argument in turn.

### A.     Statute of Limitations

"A plaintiff who seeks to bring a private suit under the FDCPA, however, must do so within its relatively short one-year statute of limitations." *Benzemann v. Citibank N.A.*, 806 F.3d 98, 100 (2d Cir. 2015) (citing 15 U.S.C. § 1692k(d)).  Plaintiff alleges that Defendants violated the FDCPA on two different occasions: first, when Defendants SPS and Shapiro sent two letters in early

October 2017 that included "threats to sue to take [Plaintiff]'s home" (Am. Compl., Dkt. 12, ¶ 40) and second, when Defendants initiated the foreclosure action against Plaintiff in March 2018 (*id.* ¶ 41). Plaintiff filed the instant action in November 2018. (*See* Complaint, Dkt. 1.) Accordingly, Plaintiff can only bring FDCPA actions for violations that occurred after November 2017. *Cf. Ehrich v. RJM Acquisitions, LLC*, No. 09-CV-2696 (BMC) (RER), 2009 WL 4545179, at *2 (E.D.N.Y. Dec. 4, 2009) ("[S]eparate communications that violate the FDCPA can create separate causes of action."). Only Plaintiff's claim regarding the 2018 foreclosure action, not the October 2017 letters, fall within this period. Therefore, Plaintiff's FDCPA claim as it relates to Defendants' October 2017 letters is dismissed.[4]

## B. Definition of Debt Collector under the FDCPA

"'Debt collector' is a defined . . . under the FDCPA . . . as any person (1) 'who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts,' or (2) 'who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.'" *Mullery v. JTM Capital Mgmt., LLC*, No. 18-CV-549 (LJV), 2019 WL 2135484, at *2–3 (W.D.N.Y. May 16, 2019) (quoting 15 U.S.C. § 1692a(6)); *see also Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 61 (2d Cir. 2004) (discussing the FDCPA's "two alternative predicates for 'debt collector' status"). Plaintiff asserts that all three Defendants are debt collectors. (*See* Am. Compl., Dkt. 12, ¶¶ 5, 8–9.) The Court addresses the status of each Defendant in turn.

---

[4] Plaintiff acknowledges that he is not relying on the October 2017 letters for his FDCPA claim. (*See* Plaintiff's Brief ("Pl.'s Br."), Dkt. 25, at 2 ("Plaintiff does not and has not alleged that [he] suffered an injury under the FDCPA when SPS sent their deceptive notices in October 2017. Rather, [Plaintiff] suffered, and continues to suffer, an injury under the FDCPA as a result of the [then-]pending [March] 2018 foreclosure action.").)

1.    <u>Defendant BONY</u>

Defendant argues that it is not a debt collector under the FDCPA because "it is a 'creditor' exempt from liability under the FDCPA."  (Defendants' Brief ("Defs.' Br."), Dkt. 26, at 2 (citing 15 U.S.C. § 1692a(6)(F)).)  Plaintiff argues that BONY is a debt collector because the principal purpose of BONY's business is debt collection, *i.e.*, the FDCPA's first definition of debt collector. (Pl.'s Br., Dkt. 25, at 2 (citing 15 U.S.C. § 1692a(6)).)  Plaintiff further argues that BONY cannot take advantage of the FDCPA's exception for debt collectors who purchased a debt that was not in default at the time of purchase, *see* 15 U.S.C. § 1692a(6)(F)(iii), because BONY purchased Plaintiff's debt after it was in default.  (Pl.'s Br., Dkt. 33, at 1.)

In the Second Circuit, courts have generally found that banks are creditors and therefore are not debt collectors.  *See, e.g.*, *Munroe v. Specialized Loan Servicing LLC*, No. 14-CV-1883 (MKB) (LB), 2016 WL 1248818, at *5 (E.D.N.Y. Mar. 28, 2016) ("Although debt collectors are subject to the FDCPA, creditors generally are not, as the FDCPA limits its reach to those collecting the dues of another and does not restrict the activities of creditors seeking to collect their own debts.") (internal quotations and citations omitted); *Johnson-Gellineau v. Steine & Assocs., P.C.*, No. 16-CV-9945 (KMK), 2019 WL 2647598, at *8 (S.D.N.Y. June 27, 2019) ("Thus, because Wells Fargo is a 'person . . . to whom a debt is owed,' and did not acquire the debt in default 'solely for the purpose of facilitating collection of such debt *for another*,' Wells Fargo was [the p]laintiff's creditor under the FDCPA.") (quoting 15. U.S.C. 1692a(4)) (emphasis in original). However, these cases do not address whether the FDCPA applies to a single entity that is both a creditor and a debt collector, *i.e.*, whether the FDCPA applies to the actions of a *debt buyer* whose only or principal business consists of purchasing defaulted debt and then collecting on that debt for its own profit, given that such an entity meets both the "creditor" and "debt collector" definition

7

under the FDCPA.  *See* 15 U.S.C. 1692a(4) (defining a "creditor" as, *inter alia*, someone "to whom a debt is owed"); 15 U.S.C. 1692a(6) (defining a "debt collector" as, *inter alia*, "any person who uses any instrumentality of interstate commerce or the mails in any business the *principal purpose* of which is the collection of *any debts*") (emphases added); *cf. Izmirligil v. Bank of N.Y. Mellon*, No. 11-CV-5591 (LDW) (AKT), 2013 WL 1345370, at *4 (E.D.N.Y. Apr. 2, 2013) (holding the defendant bank is a not a debt collector, despite trying to collect on a defaulted debt, because the "[p]laintiff does not allege, nor does he argue in opposition that he can allege, that . . . BNYM's 'principal purpose' is the collection of debts").

The Supreme Court has recently held, in *Henson v. Santander Consumer USA Inc.*, that an entity that purchases defaulted debt and then collects on it is not a debt collector based on the FDCPA's second definition of debt collector.  137 S. Ct. 1718, 1720–21 (2017) (holding that an entity that "purchase[s] a debt and then [tries] to collect it for [itself]" is not a debt collector under the FDCPA when it defines a debt collector as "anyone who 'regularly collects or attempts to collect . . . debts owed or due . . . another'") (quoting 15 U.S.C. § 1692a(6)).  The Court explicitly declined to address whether such an entity would be a debt collector based on the FDCPA's first definition of a debt collector, *i.e.*, anyone who engages "in any business the principal purpose of which is the collection of any debts." *Id.* (quoting 15 U.S.C. § 1692a(6)).  However, post-*Henson* the Third Circuit, in *Tepper v. Amos Financial, LLC*, held that a company that "admit[s] [its] sole business is collecting debts it has purchased" is a debt collector under the FDCPA because the principal purpose of its business is to collect debts, even though that business is also a creditor because it owns the debts it tries to collect.  898 F.3d 364, 370–71 (3d Cir. 2018).  At least one court in the Second Circuit has noted *Tepper*'s holding in finding that companies whose principal purpose is debt collection are debt collectors under the FDCPA even if they own the debts they

collect, making them creditors as well.  *See Bradley v. Selip & Stylianou, LLP*, No. 17-CV-6224 (FPG), 2018 WL 4958964, at *5–6 (W.D.N.Y. Oct. 15, 2018); *see also id.* at *5 n.3 (noting that "[s]ince *Henson*, a number of courts have held that a debt purchaser who meets the 'principal purpose' definition stated above is a debt collector and may be liable under the FDCPA") (citing *Tepper*, 898 F.3d at 370–71; *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1316 n.8 (11th Cir. 2015); *Norman v. Allied Interstate, LLC*, 310 F. Supp. 3d 509, 514–15 (E.D. Pa. 2018)).

Here, the Court need not decide whether the FDCPA applies to a bank's conduct if that bank's principal purpose is the collection of debts because Plaintiff's conclusory allegation that "the principal purpose of each of Defendants' business[es] is debt collection, i.e. that more than half of Defendants' respective revenues derive from debt collection" (Am. Compl., Dkt. 12, ¶ 8) is insufficient to adequately allege that BONY is a debt collector under the FDCPA, and the amended complaint contains no factual allegations to support this conclusory statement as to BONY.  *See, e.g.*, *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d at 404 (A court "need not credit conclusory statements unsupported by assertions of facts or legal conclusions . . . presented as factual allegations.") (citing *Papasan*, 478 U.S. at 286).  Accordingly, BONY is dismissed as defendant from this action.

## 2.   Defendants SPS and Shapiro

Plaintiff also asserts that Defendants SPS and Shapiro are debt collectors under the FDCPA.  Plaintiff specifically alleges that "Shapiro's primary business is the prosecution of foreclosure actions in New York."  (Am. Compl., Dkt. 12, ¶ 5.)  Notably, Shapiro does not seem to dispute its debt collector status.  (*See* Defs.' Br., Dkt. 24, at 1–3.)  The Court, therefore, finds Plaintiff's allegations are sufficient to allege that Shapiro is a debt collector under the FDCPA.  *See Heintz v. Jenkins*, 514 U.S. 291, 299 (1995) ("[T]he [FDCPA] applies to attorneys who

'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation."). SPS, by its own admission, is also a debt collector. (*See* Exhibit A, Dkt. 12-1, at ECF 21 (noting, in a letter from SPS, that "[t]his communication from a debt collector is an attempt to collect a debt").) However, SPS was not a party to the foreclosure—the only non-time-barred debt collection activity under the FDCPA that is alleged.[5] Accordingly, Plaintiff's FDCPA claim against SPS is dismissed.

### C.    A Foreclosure Action is an Attempt to Collect a Debt Under the FDCPA

Having found that the amended complaint sufficiently alleges that Shapiro qualifies as a debt collector under the FDCPA, the Court next considers whether the complaint adequately alleges an FDCPA claim against the firm. Plaintiffs seeks to bring an FDCPA claim based on Shapiro's filing of a state foreclosure action. (*See* Am. Compl., Dkt. 12, ¶ 41.) The Second Circuit, in *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, held that "a foreclosure action is an attempt to collect a debt as defined by the FDCPA." 897 F.3d 75, 82 (2d Cir. 2018) (quotation omitted). In doing so, the Circuit rejected the argument that a foreclosure action is not subject to the FDCPA because its purpose is to "enforce a security interest and obtain possession of property, rather than to obtain payment on a debt." *Id.* at 83. The panel in *Cohen* explained its reasoning as follows:

> New York law gives mortgagors redemption rights and allows mortgagees to obtain deficiency judgments if the proceeds from the foreclosure sale are less than the outstanding debt. These provisions indicate that the purpose of foreclosure is to obtain payment on the underlying loan, rather than mere possession of the subject property. Indeed, such remedies would not exist if foreclosure were not undertaken for the purpose of obtaining payment.

---

[5] The Court finds Plaintiff's argument that SPS is an alter-ego of BONY and can therefore be held vicariously liable for BONY's initiation of the foreclosure proceeding unavailing. Plaintiff provides no legal support for this argument (*see* Pl.'s Br., Dkt. 25, at 2), nor has the Court uncovered any.

*Id.* (citing, *inter alia*, N.Y. Real Prop. Acts §§ 1352, 1371) (additional internal quotation and citation omitted).  The Second Circuit later clarified in a summary order in *Weaver v. Boriskin*, 751 F. App'x 96 (2d Cir. 2018):[6]

> [In *Cohen*,] . . . we concluded that a New York foreclosure proceeding constituted debt collection under the FDCPA because *every* mortgage foreclosure, judicial or otherwise, is undertaken for the very purpose of obtaining payment on the underlying debt.  This is so, we concluded in *Cohen*, regardless of whether the mortgagee sought only the equitable remedy [of possession of the subject property].

*Id*. at 99 (summary order) (internal quotations, alterations, and citations omitted).[7]

Shapiro argues that the Supreme Court's recent decision in *Obduskey* abrogates *Cohen*. (Defs.' Br., Dkt. 31, at 4–6; *see* Defs.' Br., Dkt. 32, at 1 (noting that Defendant Shapiro adopts the arguments of its co-Defendants BONY and SPS).)  In *Obduskey*, the plaintiff had brought an FDCPA claim against a law firm that, on behalf of a bank, had initiated a nonjudicial foreclosure[8] by filing a notice of election and demand with the county public trustee.  *Obduskey*, 139 S. Ct. at 1035.  The notice "stated the amount due and advised that the public trustee would sell the property for the purpose of paying the indebtedness."  *Id.* (internal quotations and citation omitted).  The plaintiff argued that the law firm had violated the FDCPA § 1692(g) by initiating the nonjudicial foreclosure after the plaintiff had already contested the debt and the law firm had not provided verification of the debt before initiating the foreclosure.  *Id.*

---

[6] *See Jackler v. Byrne*, 658 F.3d 225, 244 (2d Cir. 2011) (noting that "denying summary orders precedential effect does not mean that the court considers itself free to rule differently in similar cases" (internal quotations, brackets, and citation omitted)).

[7] The panel's clarification in *Weaver* disposes of Shapiro's argument that its initiation of a foreclosure action is not subject to the FDCPA because it did not specifically seek a deficiency judgment in the underlying state foreclosure action.

[8] A nonjudicial foreclosure occurs when notice of the foreclosure is sent to the defaulting party and the sale of the property occurs outside of court supervision.  *Obduskey*, 139 S. Ct. at 1034.

The Supreme Court did not reach the merits of the plaintiff's claim because it held that "where [a] business is engaged in no more than the kind of security-interest enforcement at issue here—*nonjudicial foreclosure proceedings*," that business falls "outside the scope of the primary 'debt collector' definition" for purposes of an FDCPA claim. *Id.* at 1031 (emphasis added). Shapiro argues that the Court's reasoning in *Obduskey* applies equally to the judicial foreclosure at issue here. (Defs.' Br., Dkt. 31, at 5 ("In light of *Obduskey*, the holding and reasoning of *Cohen* no longer applies.").)

The Court disagrees. In *Obduskey*, the Court explicitly stated that "whether those who judicially enforce mortgages fall within the scope of the primary definition [of a debt collector] is a question we can leave for another day," 139 S. Ct. at 1039, and noted that the Tenth Circuit, in the decision below, had found that "the availability of a deficiency judgment is a potentially relevant distinction between judicial and nonjudicial foreclosures," *id.* (citing *Obduskey v. Wells Fargo*, 879 F.3d 1216, 1221–22 (10th Cir. 2018)). Given that *Cohen* premised its decision on the availability of deficiency judgments under New York foreclosure law, *see Cohen*, 897 F.3d at 83; *Weaver*, 751 F. App'x at 99, the Court does not find that *Obduskey* abrogates or overrules *Cohen*. In doing so, it joins several of its sister courts that have reached the same conclusion since *Obduskey*. *See Werner v. Selene Fin., LLC*, No. 17-CV-6514 (NSR), 2019 WL 1316465, at *4 n.9 (S.D.N.Y. Mar. 22, 2019); *Tardi-Osterhoudt v. McCabe, Weisberg & Conway LLC*, No. 18-CV-840 (BKS) (CFH), 2019 WL 4242410, at *10 (N.D.N.Y. Sept. 6, 2019); *cf. Johnson-Gellineau*, 2019 WL 2647598, at *12. Accordingly, the Court considers whether Plaintiff has adequately

alleged an FDCPA violation against Shapiro based on its filing of a foreclosure action for a time-barred debt.[9]

### D.      Filing a Time-barred Action Violates the FDCPA

Plaintiff brings this action pursuant to 15 U.S.C. §§ 1692e and 1692e(2),[10] which "prohibit[] debt collectors from using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt,' including, as relevant here, misrepresenting the 'character, amount, or legal status' of a debt." *Arias*, 875 F.3d at 135 (quoting 15 U.S.C. § 1692e). In determining whether a representation is false, deceptive, or misleading, the Court uses the "least sophisticated consumer" standard. *See, e.g.*, *id.*; *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008) ("[T]he question of whether a communication complies with the FDCPA is

---

[9] Shapiro also argues that Plaintiff's FDCPA claim is barred by the *Noerr-Pennington* doctrine. (*See, e.g.*, Defs.' Br., Dkt. 26, at 3–5; *see also* Defs.' Br., Dkt. 27, at 1 (noting that Defendant Shapiro adopts the arguments of its co-Defendants BONY and SPS).) This doctrine "immunizes from liability a party's commencement of a prior court proceeding." *T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*, 312 F.3d 90, 93 (2d Cir. 2002). The Court finds that this doctrine is inapplicable here, given that "[t]he doctrine's 'sham exception,' . . . excludes any abuse of process that bars access to the courts, 'such as unethical conduct in the setting of the adjudicatory process' or the pursuit of a 'pattern of baseless, repetitive claims.'" *Sykes v. Mel Harris and Assocs., LLC*, 757 F. Supp. 2d 413, 429 (S.D.N.Y. 2010) (quoting *Landmarks Holding Corp. v. Bermant*, 664 F.2d 891, 896 (2d Cir. 1981)). Though *Cohen* did not address *Noerr-Pennington*, the holding that the FDCPA applies to foreclosure actions implicitly suggests that this doctrine does not apply to such actions, which are grounded in fraud. *See Toohey v. Portfolio Recovery Assocs., LLC*, No. 15-CV-8098 (GBD), 2016 WL 4473016, at *10 (S.D.N.Y. Aug. 22, 2016) ("Additionally, it is doubtful the [*Noerr Pennington*] doctrine applies to FDCPA causes of action."); *Cameron v. LR Credit 22, LLC*, 998 F. Supp. 2d 293, 300 n.8 (S.D.N.Y. 2014) (finding that *Noerr-Pennington* does not apply to an FDCPA action); *Fritz v. Resurgent Capital Servs., LP*, 955 F. Supp. 2d 163, 176 (E.D.N.Y. 2013) ("The Court agrees with and adopts the Sixth Circuit's reasoning that *Noerr-Pennington* does not provide immunity for intentional misrepresentations [like the claims made under § 1692e of the FDCPA] made in litigation.").

[10] The Court notes that Plaintiff also brings his claim under § 1692e(5), which prohibits "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). However, this section of the FDCPA is inapplicable to Plaintiff's claim because it would only apply to the threats of litigation made in the October 2017 letters, which, as described *supra*, are time-barred.

determined from the perspective of the 'least sophisticated consumer.'").   "While the least sophisticated consumer may lack the astuteness of a Philadelphia lawyer or even the sophistication of the average, everyday, common consumer, he can nonetheless be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Kolbasyuk v. Capital Mgmt. Servs. LP*, 918 F.3d 236, 239 (2d Cir. 2019) (internal quotations and citation omitted).   Under this standard, a representation is misleading or deceptive, "if it is 'open to more than one reasonable interpretation, at least one of which is inaccurate.'" *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993)); *Arias*, 875 F.3d at 135.

Shapiro argues that even if the FDCPA applies to foreclosure actions generally, it should not apply here because filing a time-barred action is not misleading given that the running of a statute of limitations is an affirmative defense.   (*See, e.g.*, Defs.' Br., Dkt. 31, at 2–4.)   Contrary to Shapiro's argument, however, courts in this Circuit have generally found that filing a civil action knowing[11] that it was time-barred is a violation of the FDCPA.   *See Diaz v. Portfolio Recovery Assocs., LLC*, No. 10-CV-3920 (MKB) (CLP), 2012 WL 1882976, at *5 (E.D.N.Y. May 24, 2012) ("Accordingly, Plaintiff stated a claim under Sections 1692e and 1692f by alleging that Defendant

---

[11] Shapiro argues that imposing FDCPA liability when a debt collector files a claim on a time-barred debt would "shift[] the burden to creditors to investigate the merits of *affirmative defenses* to recovering a debt, whereas the state law puts the burden on the debtor."   (Defs.' Br., Dkt. 31, at 3.)   Shapiro misunderstands the situation.   Plaintiff alleges that Defendants knew his debt was time-barred when they filed the state foreclosure action.   (*See* Am. Compl., Dkt. 12, ¶ 33.)   If, as Defendant's argument suggests (though it does not appear to be the situation here), a debt collector files a complaint with a good faith basis to believe that it is entitled to recover, *i.e.*, it believes that the statute of limitations on the debt has not run, the FDCPA allows for that debt collector to "plead 'bona fide error' as an affirmative defense."   *Cameron*, 998 F. Supp. 2d 293 at 300 n.7.   However, when a debt collector already knows that a debt is time-barred, as sufficiently pled here, the FDCPA can impose liability for choosing to file a legal complaint alleging that it is entitled to payment despite that knowledge.   *See Arias*, 875 F.3d at 136 ("Section 1692e mainly targets practices that take advantage of a debtor's naivete or lack of legal acumen.").

14

filed a complaint to collect a time-barred debt without meaningfully reviewing the complaint and

that Defendant took legal action when it knew there was no factual basis for such action."); 

*Cameron*, 998 F. Supp. 2d at 300 ("Therefore, the only remaining question is whether the filing of

such a time-barred complaint is a violation of the FDCPA.  This Court joins others in concluding

that it is.") (collecting cases).

Shapiro argues that, here, the Supreme Court's decision in *Midland* forecloses Plaintiff's

claim.  (Defs.' Br., Dkt. 31, at 2 (noting that the Supreme Court "has recognized that the expiration

of statute of limitations does not extinguish a debt") (citing to *Midland*, 137 S. Ct. at 1411).)  In

*Midland*, the Supreme Court held that filing a time-barred notice of claim in a bankruptcy

proceeding did not violate the FDCPA.  137 S. Ct. at 1411.  However, in *Midland*, the Supreme

Court noted key differences between a bankruptcy proceeding and other civil proceedings:

> But the context of a civil suit differs significantly from the present context, that of
> a Chapter 13 bankruptcy proceeding.  The lower courts rested their conclusions [in
> FDCPA cases] upon their concern that a consumer might unwittingly repay a time-
> barred debt.  [For example] the Seventh Circuit pointed out that few unsophisticated
> consumers would be aware that a statute of limitations could be used to defend
> against lawsuits based on stale debts.  The passage of time, the Circuit wrote, dulls
> the consumer's memory of the circumstances and validity of the debt and the
> consumer may no longer have personal records.  Moreover, a consumer might pay
> a stale debt simply to avoid the cost and embarrassment of suit.
>
> These [civil proceeding] considerations have significantly diminished force in the
> context of a Chapter 13 bankruptcy.  The consumer initiates such a [bankruptcy]
> proceeding and consequently the consumer is not likely to pay a stale claim just to
> avoid going to court.  A knowledgeable trustee is available.  Procedural bankruptcy
> rules more directly guide the evaluation of claims.

*Id.* at 1413 (citing to, *inter alia*, the U.S. Bankruptcy Code, 11 U.S.C. §§ 301, 303(a), 1302(a))

(internal quotation marks omitted); *see also id.* (assuming, *arguendo*, the correctness of the

precedent set by "several lower courts [that] have found or indicated that, in the context of an

ordinary civil action to collect a debt, a debt collector's assertion of a claim known to be time

barred is 'unfair' [under the FDCPA]").

The Second Circuit addressed *Midland* in *Arias*, where the defendant argued that *Midland* barred the plaintiff's FDCPA claim that was based on the defendant's initiation of a garnishment action. *Arias*, 875 F.3d at 137. In *Arias*, the panel rejected defendant's argument that *Midland* cautions against imposing FDCPA liability based on litigation conduct. *Id.* at 137–38.

> [T]he rationale of *Midland* and *Simmons* [*v. Roundup Funding, LLC*, 622 F.3d 93 (2d Cir. 2010)] reflects the special protections afforded a consumer under the Bankruptcy Code—protections that are unavailable where, as here, the proceedings are in State court and the consumer, often unfamiliar with the law governing garnishment of bank accounts, has the benefit of neither counsel nor a bankruptcy trustee.

*Id.* at 137. As result, it found that "where court filings routinely come to the consumer's attention and may affect his or her defense of a collection claim debt collectors do not have immunity from FDCPA liability for their litigation conduct." *Id.* (internal quotations and citations omitted). The same considerations apply here. As Shapiro acknowledges, the *Arias* court "found that garnishment of a bank account was unique with less protection than a bankruptcy proceeding." (Defs.' Br., Dkt. 31 at 4.) Likewise, the Court finds that the foreclosure proceeding at issue here also affords Plaintiff significantly less protection than a bankruptcy proceeding. For example, Plaintiff, brought into state court as a defendant, did not have the benefit of a bankruptcy trustee to guide him through the unfamiliar process of a foreclosure proceeding. *Cf. Midland*, 137 S. Ct. at 1413 (noting that a trustee in a bankruptcy provision "must examine proofs of claim, and, where appropriate, pose an objection" if the claim is unenforceable). Furthermore, in *Midland*, the debt collector's notice of claim specifically and expressly stated that the debt was time-barred. *Id.* at 1411 (noting that the proof of claim statement "made clear . . . that the 6-year statute of limitations governing collection of the claimed debt had long since run"). Here, there are no allegations (nor reason to believe) that Shapiro ever notified Plaintiff that the debt it was seeking to collect was time-barred. (*Cf.* Defs.' Br., Dkt. 26, at 2 (arguing that "[s]tatements concerning the debt in the

complaint of the 2018 Foreclosure Action were true [because] [Plaintiff's] debt was[—]and still is[—]due").)  Defendant's alleged failure to provide this material information about the legal status of Plaintiff's debt is therefore sufficient to state a claim under §§ 1692e and 1692e(2) of the FDCPA.

*      *      *

Accordingly, for the reasons stated above, Plaintiff's FDCPA claim may proceed against Defendant Shapiro.[12]

## II.   Plaintiff's GBL § 349 Claim

"To state a claim under GBL § 349, a plaintiff 'must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act.'"  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014) (quoting *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 (N.Y. 2000)).  "Section 349 on its 'face applies to virtually all economic activity, and its application has been correspondingly broad.'"  *McCrobie v. Palisades Acquisition XVI, LLC*, 359 F. Supp. 3d 239, 254 (W.D.N.Y. 2019) (quoting *Karlin v. IVF Am., Inc.*, 712 N.E.2d 662, 665 (N.Y. 1999)) (internal brackets omitted).  GBL § 349 is "directed at wrongs against the

---

[12] Shapiro has requested that, in the event that the Court does not dismiss Plaintiff's FDCPA claim, that the action be stayed pending resolution of the 2018 foreclosure action pursuant to the *Colorado River* abstention doctrine.  (Defs.' Br., Dkt. 26, at 2 n.1.)  The Court does not find that *Colorado River* compels the Court to stay the instant action given the different concerns in the relevant state and federal proceedings. "This action concerns defendants' debt-collection methods, while the collection actions involve the validity of the underlying debts.  Since the collection actions will not resolve [P]laintiff['s] claims, abstention would not be appropriate."  *Fritz*, 955 F. Supp. at 175; *see also Cameron, LLC*, 998 F. Supp. 2d at 300 n.8 ("*Colorado River* abstention [is] inapplicable where federal and state actions address different questions and thus are not 'parallel.'") (citing *Fritz*, 955 F. Supp. at 175).

consuming public.'" *Id.* (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995)).

Plaintiff alleges that Defendants SPS and Shapiro[13] violated GBL § 349 when they threatened legal action against Plaintiff in the October 2017 letters.[14]  Defendants argue that Plaintiff fails to state a claim because he has not adequately alleged that the letters are "consumer-oriented."[15]  (Defs.' Br., Dkt. 31, at 7.)  The Court disagrees.

"The 'consumer-oriented' requirement may be satisfied by showing that the conduct at issue 'potentially affects similarly situated consumers.'"  *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (quoting *Oswego Laborers'*, 647 N.E.2d at 745)).  "Claims arising under Section 349 need not allege 'a repetition or pattern of deceptive behavior' so long as the conduct alleged 'potentially affect[s] similarly situated consumers.'"  *Hunter v. Palisades Acquistion XVI, LLC*, No. 16-CV-8779 (ER), 2017 WL 5513636, at *7 (S.D.N.Y. Nov. 16, 2017) (quoting *Oswego Laborers'*, 647 N.E.2d at 744–745).  "The requirement that defendants engaged in 'consumer-

---

[13] Plaintiff does not specifically allege that Defendant BONY was involved in sending the letters.

[14] Plaintiff states that he is not bringing a GBL § 349 claim on the basis of Defendants' filing of a foreclosure action.  (*See* Pl.'s Br., Dkt. 33, at 3 ("Plaintiff never alleged that GBL [§] 349 applies to a lawsuit, only to the deceptive notices sent.").)  In contrast to Plaintiff's FDCPA claim, his GBL § 349 claim, based on the October 2017 letters, is not time-barred because the statute of limitations under GBL § 349 is three years. *Bristol Vill., Inc. v. La.-Pac. Corp.*, 170 F. Supp. 3d 488, 497 (W.D.N.Y. 2016) ("Claims brought pursuant to GBL § 349 are subject to a three-year statute of limitations.") (citing *Gaidon v. Guardian Life Ins. Co. of Am.*, 750 N.E.2d 1078, 1082 (N.Y. 2001)).

[15] Defendants also argue that threatening to take legal action when a debt is time-barred is not misleading or deceptive.  (Defs.' Br., Dkt. 31, at 8.)  However, for the same reasons that filing a complaint that Defendants knew to be time-barred is misleading and deceptive, as discussed *supra* at 13–17, the Court finds that threatening to take legal action on a debt that is time-barred is also misleading and/or deceptive.

oriented' conduct has been construed liberally." *McCrobie*, 359 F. Supp. 3d at 254 (internal quotations and citation omitted); *see also Hunter*, 2017 WL 5513636, at *7 (noting that "the critical question is whether the conduct alleged in the complaint affects the public interest in New York") (internal quotations and citation omitted).

Here, Plaintiff's allegations that Shapiro's primary business is bringing foreclosure actions and that SPS "regularly collect[s] or attempt[s] to collect consumer debts owed or due or asserted to be owed or due another" support the inference that the letters Defendants send—including the ones to Plaintiff in October 2017—are consumer-oriented. (*See* Am. Compl., Dkt. 12, ¶¶ 5, 8.) Moreover, Defendants acknowledge that these letters were sent pursuant to New York state law and that their failure to send such letters would have impacted their ability to bring a foreclosure action against Plaintiff. (*See* Defs. Br., Dkt. 31, at 8 (noting that "[t]he October 5 Letter . . . was sent in compliance with NY RPAPL [New York Real Property Acts and Proceedings Law] § 1304" and that "[t]he October 6 Letter . . . was sent in compliance with BONY's contractual obligation under paragraph 22 of Plaintiff's mortgage loan"); *see also* Exhibit A, Dkt. 12-1, at ECF 1 (noting that the letter was required "[u]nder New York State Law").) These facts further support an inference that Shapiro's and SPS's behavior is consumer-oriented. The October 2017 letters were not drafted for Plaintiff specifically, but rather are letters that Shapiro and SPS send as part of their debt collection business to any consumer that they are seeking to collect from. (*Compare* Exhibit A, Dkt. 12-1, at ECF 1–2, *with* N.Y. R.P.A.P.L § 1304.) If, as Plaintiff alleges happened to him, Defendants Shapiro and SPS send letters that threaten to take legal action on a debt they know is time-barred, then Defendants' actions may well have a broader impact on the public at large. *See McCrobie*, 359 F. Supp. 3d at 255 (finding that a plaintiff had sufficiently alleged that conduct was consumer-oriented when "[o]ne of the debts and judgments that the defendants attempted to

collect was [the plaintiff]'s, and the [complaint] claims that the defendants did not in fact have the legal right to collect that debt.  Because, according to the [complaint], the defendants buy consumer credit debts of the public in bulk, if this alleged conduct is typical of their debt collection business practices, the defendants' actions may well have a broader impact on the public at large."); *cf. Hunter*, 2017 WL 5513636, at *8 (noting that "[n]umerous courts in the [the Second Circuit] have held that the persistent filing of fraudulent debt collection lawsuits against New York consumers does fall within the scope of Section 349") (internal quotations and citations omitted) (collecting cases).  Accordingly, the Court finds that Defendants' October 2017 letters were consumer-oriented and that Plaintiff's claim under GBL § 349 may proceed against Defendants Shapiro[16] and SPS.[17]

---

[16] Defendant Shapiro notes that "[c]ontrary to the contention by Plaintiff, [it] did <u>not</u> mail out the letters."  (Defs.' Br., Dkt. 24, at 1.)  However, at the motion to dismiss stage, the Court is obligated to accept Plaintiff's allegations as true, so long as they are not wholly conclusory, and Plaintiff specifically alleges that the October 2017 "letters were mailed out by Defendant Shapiro at the behest of Defendant SPS."  (Am. Compl., Dkt. 12, ¶ 29.)  The fact that Shapiro, soon after the letters were sent, brought a foreclosure action as threatened by the letters, further supports the inference that Shapiro was involved in sending the letters.  (*Id.* ¶¶ 30–31.)  Of course, this factual issue can be further investigated in discovery.

[17] The Court notes that SPS faces liability only as to Plaintiff's state claim and has asked that supplemental jurisdiction be denied if the FDCPA claim against it is dismissed.  (Defs.' Br., Dkt. 31, at 2 n.3.)  However, given that Plaintiff's action will proceed against Defendant Shapiro as to both the foreclosure claim and the October 2017 letters, the Court finds that the federal law and state law claims "derive from a common nucleus of operative fact" making the exercise of supplemental jurisdiction appropriate in the instant action.  *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)); *see also id.* (noting that "the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity" can support an exercise of supplemental jurisdiction over state claims even if a plaintiff's federal claims have been dismissed) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

## CONCLUSION

For the reasons stated above, Defendants' motions to dismiss are granted in part and denied in part.  Plaintiff's FDCPA claim will proceed as to Defendant Shapiro only, while Plaintiff's GBL § 349 claim will proceed as to Defendants Shapiro and SPS.  All other claims are dismissed.  Given that no claims remain against Defendant BONY, it is terminated from this action.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 30, 2019
         Brooklyn, New York